McAVOY v H B SHERMAN COMPANY

STRICKLIN v AMERICAN CHAIN & CABLE COMPANY, INC

TURNER v GENERAL MOTORS CORPORATION

MICHIGAN SELF-INSURERS' ASSOCIATION v BUREAU OF
WORKMEN'S COMPENSATION

Docket Nos. 58845, 58846, 58983, 58855. Argued February 1, 1977
(Calendar Nos. 4–7).—Decided October 11, 1977. Rehearing
denied and motion for clarification granted 402 Mich 953.

The constitutionality of 1975 PA 34, which amended the Worker's
Disability Compensation Act to provide for payment to a claim-
ant of 70% of the weekly benefit rate ordered by a hearing
referee during an appeal of an award to the Workmen's Com-
pensation Appeal Board, is the common issue in these cases.

Ralph McAvoy was awarded workmen's compensation benefits
against H. B. Sherman Company and American Mutual Liabil-
ity Insurance Company. Wiley Stricklin was awarded work-
men's compensation benefits against American Chain and Ca-
ble Company, Inc., and American Mutual Liability Insurance
Company. Thomas Turner was awarded workmen's compensa-
tion benefits against General Motors Corporation, Fisher Body
Plant. The defendants in each case sought an appeal before the
Workmen's Compensation Appeal Board. After the enactment
of 1975 PA 34 the appeal board ordered payment of 70% of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 4–6, 11, 12, 21, 24, 26] 16 Am Jur 2d, Constitutional Law §§ 542–
547.

[2] 82 Am Jur 2d, Workmen's Compensation § 2.

[3] 20 Am Jur 2d, Courts §§ 9, 66, 80.

[4, 6, 9–12, 14, 15, 17–21, 24–28] 82 Am Jur 2d, Workmen's Compensa-
tion § 613 et seq.

[5, 7] 2 Am Jur 2d, Administrative Law §§ 738, 739.

[8] 2 Am Jur 2d, Administrative Law § 706 et seq.

[13–15] 73 Am Jur 2d, Statutes § 41.

81 Am Jur 2d, Workmen's Compensation § 17.

[16, 17] 16 Am Jur 2d, Constitutional Law § 434 et seq.

73 Am Jur 2d, Statutes § 347 et seq.

[22, 23] 82 Am Jur 2d, Workmen's Compensation §§ 547, 635–637.

[26–28] 82 Am Jur 2d, Workmen's Compensation § 371.

benefits awarded during the pendency of the appeals, which defendants refused to do until the constitutional challenge to the act was resolved. The Workmen's Compensation Appeal Board dismissed the defendants' appeals for failure to comply with the payment order. The Court of Appeals, T. M. Burns, P. J., and R. B. Burns and V. J. Brennan, JJ., in a consolidated appeal of the three cases affirmed (Docket Nos. 25571, 25597, 25598). Defendants appeal.

Michigan Self-Insurer's Association brought a complaint against the Bureau of Workmen's Compensation, the Workmen's Compensation Appeal Board, and the Second Injury Fund seeking a declaratory judgment that the amendment is unconstitutional and seeking injunctive relief to prevent enforcement of the act. The Ingham Circuit Court, James T. Kallman, J., granted summary judgment for the plaintiff (Docket No. 26914). The Court of Appeals, T. M. Burns, P. J., and R. B. Burns and V. J. Brennan, JJ., reversed and dissolved the injunction (Docket No. 26914). Plaintiff appeals. *Held:*

1. The guarantee of due process demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.

2. The primary goal of any workmen's compensation scheme is the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs, regardless of any traditional tort concepts of liability. The legislation provides the disabled worker with benefits during the period of his disability so that the worker and his dependents may survive the temporary loss of income. Its real and substantial relation to a valid legislative objective has successfully withstood due process challenges.

3. Because of the increasing number and sophistication of appeals of worker's compensation awards by employers and insurance carriers, workers who have been awarded benefits and are indeed ultimately found to be entitled to such benefits because of legitimate disabilities must often wait years to begin receiving compensation while the appellate process is pending. In the interim, the appellate process hamstrings the delivery of benefits and contributes to the very social ill which the workmen's compensation act sought to remedy.

4. The act which provides that 70% of the weekly workmen's compensation benefits awarded to a claimant is not stayed pending appeal does not violate procedural due process. The employers' and insurance carriers' right to appeal the award remains intact. The claimant does not receive the entire award,

only that part of the award which statistically reflects the historical ratio of ultimate affirmances.

5. Due process does not necessarily guarantee appellant employers and insurance carriers a right to a complete stay of benefits while an award, which was entered with full due process accorded, is appealed to a higher tribunal. In fact, it is arguable that the staying of all benefits awarded, pending appeal, constitutes a denial of the claimants' due process rights.

6. The Constitution guarantees judicial review of administrative decisions. However, there is nothing in the "70% statute" or the Worker's Disability Compensation Act as a whole which violates this constitutional mandate. Nowhere in the constitutional structure is it stated or implied that the right to review includes an automatic stay of the initial award. It would be inaccurate to contend that the Constitution guarantees an unencumbered *de novo* right to appeal. The Legislature is provided with the authority to exert substantial control over the mechanics of how administrative decisions are to be appealed. No employer or insurance carrier will be discouraged from pursuing a meritorious appeal under this act. Furthermore, if the hearing referee's award is vacated at any appellate stage, the 70% benefits are terminated. If the award is reinstated and further appealed, the 70% benefits resume. Therefore, the "70% no-stay" provision ultimately encourages all parties to expedite appeals. The provision bears a real and substantial relation to the object sought to be attained.

7. The reimbursement to which appellants are entitled, if they are successful on appeal, must come from the Second Injury Fund and not from the recipients of the 70% benefits. The reimbursement provision of the statute in no way affects the ultimate constitutionality of the "no-stay" provision. The Second Injury Fund is a *state* insurance fund created by the Legislature to insure carriers and self-insured employers against certain losses from workmen's compensation claims. The fund does not belong to the employers or insurance carriers but it spreads the risk among all the self-insured employers and carriers. Although the Court need not address the issue since reimbursement is not constitutionally mandated, it would hold that the reimbursement provision does not constitute a confiscatory taking without due process of law.

8. The thrust of the challenged legislation is primarily social and economic, and deals with property rights, not fundamental rights. Therefore, the burden is on the appellants challenging the legislation on equal protection grounds to show that the classification is arbitrary and does not bear a rational relation

to the object of the legislation. The class drawn by the legislation is not "all appellants" but rather "all self-insured employers and carriers". The class as conceived by the Legislature treats carriers and self-insurers as similarly situated persons and is obviously reasonable. The appellants have failed to meet their burden.

9. The Legislature has the authority to alter the *method* of enforcing pre-existing contractual rights. The Legislature can elect to modify the remedies for enforcement of a contract without violating constitutional impairment of contract prohibitions. The "70% statute" does not increase an employer's or carrier's substantive liability for injuries incurred or appeals taken by employers before the act's effective date. Therefore, retroactive application of 1975 PA 34 neither impairs existing contracts nor retroactively changes existing substantive law.

10. The power of the Workmen's Compensation Appeal Board to dismiss appeals for noncompliance with 1975 PA 34 is necessarily implied from the statute itself; the statute operates as a condition precedent for the perfection of an appeal. The appellants were all given written notice that dismissal orders would enter if they did not comply with the statute and a copy of the precedential judicial determination accompanied the notice.

The "70% statute", 1975 PA 34, is constitutional. The decisions of the Court of Appeals are affirmed but modified to provide for reimbursement by the Second Injury Fund.

Justice Coleman dissented. She wrote:

1. It is agreed that the Worker's Disability Compensation Act serves a laudable purpose, and that the goal of speedy lawful payments to a deserving worker is exemplary. However, the incursion upon basic constitutional rights of one party in order to achieve speedy payment to another who may not be entitled at all to payment is not a proper means to attain the goal.

2. An employer must begin 70% payments under 1975 PA 34 before Workmen's Compensation Appeal Board action despite the possibility of further or contrary evidentiary findings by the appeal board, and also before judicial review of questions of law as provided by Constitution and statute. The Workmen's Compensation Appeal Board review is a critical stage of the process where law and fact are sifted out and the scope of judicial review circumscribed. The imposition of liability upon employers and insurance carriers before these reviews are completed deprives them of procedure essential to due process of law.

3. The act is plainly confiscatory in nature. Insurers are

reimbursed from the Second Injury Fund, which they finance. As the fund is depleted, they must pay more money into it. An employer or insurance carrier has a right to be fully reimbursed for being required to pay benefits to undeserving claimants, which means a dollar back for a dollar paid. 1975 PA 34 does not provide full reimbursement.

4. The Second Injury Fund was designed to spread the cost of workers' benefits among all carriers and to encourage the hiring of the handicapped. Reimbursement from the fund under 1975 PA 34 lowers the balance of net assets in the fund, thus increasing the total assessment. This means that each insurance carrier's assessment will increase, including the carriers being "reimbursed". The failure to fully reimburse cannot be avoided by saying that the money changes character by placement in the fund and becomes the state's money.

5. The statute is substantive in that it bestows new "windfall" benefits upon undeserving claimants and creates new financial obligations upon employers and insurance carriers which they cannot fully recover. This is not simply a different method of payment to deserving claimants so as to justify the term remedial legislation. It imposes new obligations upon defendants and bestows new kinds of benefits on losing claimants. Therefore, a decision that the statute is constitutional should not bear with it any obligations incurred by its terms prior to its effective date.

The "70% statute", 1975 PA 34 is unconstitutional and severable from the Worker's Disability Compensation Act.

70 Mich App 532; 246 NW2d 631 (1976) affirmed as modified.

70 Mich App 565; 246 NW2d 316 (1976) affirmed as modified.

## Opinion of the Court

1. Constitutional Law—Statutes—Due Process.

> The guarantee of due process demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.

2. Workmen's Compensation—Legislative Purpose—Benefits.

> The primary goal of workmen's compensation legislation is the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs, regardless of any traditional tort concepts of liability, so that the worker and his dependents may survive the temporary cessation of necessary income.

3. STATUTES—PUBLIC POLICY.

It is not the role of the Supreme Court to decide whether the Legislature acted wisely in enacting a statute; the Court will not substitute its own social and economic beliefs for those of the Legislature, which is elected by the people to pass laws.

4. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—DUE PROCESS.

The statute which provides that, pending appeal, 70% of the workmen's compensation benefits awarded to a claimant are not stayed does not violate procedural due process because the employers and insurance carriers receive a fair, impartial and full initial determination before an administrative judge, the right to appeal remains intact, and the claimant does not receive the entire award, only that part of the award which statistically reflects the ratio of ultimate affirmances (1975 PA 34; MCL 418.862; MSA 17.237[862]).

5. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—DUE PROCESS.

Due process does not necessarily guarantee appellant employers and insurance carriers a right to a complete stay of workmen's compensation benefits while an award, which was entered with full due process accorded, is appealed to a higher tribunal (1975 PA 34; MCL 418.862; MSA 17.237[862]).

6. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—DUE PROCESS.

The provision that an appeal does not operate as a stay of 70% of workmen's compensation benefits pending appeal not only comports with procedural due process guarantees for employers and insurance carriers, but also extends a quantum of due process to disabled employees who have been awarded benefits but are denied them by a strangulating appellate process (1975 PA 34; MCL 418.862; MSA 17.237[862]).

7. ADMINISTRATIVE LAW—APPEAL AND ERROR—CONSTITUTIONAL LAW.

The Constitution guarantees judicial review of administrative decisions, but nowhere is it stated or implied that this right to review includes an automatic stay of the initial award made by the administrative judge (Const 1963, art 6, § 28).

8. ADMINISTRATIVE LAW—APPEAL AND ERROR—CONSTITUTIONAL LAW —WORDS AND PHRASES.

The phrase "as provided by law" in the constitutional guarantee of judicial review of administrative decisions clearly vests the Legislature with the authority to exert substantial control over

the mechanics of how administrative decisions are to be appealed (Const 1963, art 6, § 28).

9. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL.
   A workmen's compensation claimant is entitled to 70% of the benefits awarded by a hearing referee until such time as the hearing referee's award is reduced or rescinded upon an appeal (1975 PA 34; MCL 418.862; MSA 17.237[862]).

10. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIMBURSEMENT—SECOND INJURY FUND.
   The act which requires reimbursement for workmen's compensation benefits paid during the pendency of an appeal which subsequently reduces or rescinds those benefits clearly means that payment is mandatory or imperative from the Second Injury Fund and not from the claimants who receive the benefits (1975 PA 34; MCL 418.862; MSA 17.237[862]).

11. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIMBURSEMENT—DUE PROCESS.
   The Legislature has an option as to whether it wishes to provide for reimbursement of workmen's compensation benefits paid during a pending appeal; however, the Legislature's choice to provide for a unitary system of reimbursement from the Second Injury Fund in no way affects the ultimate constitutionality of the provision that an appeal does not operate to stay 70% of an award (1975 PA 34; MCL 418.862; MSA 17.237[862]).

12. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIMBURSEMENT—DUE PROCESS.
   Reimbursement from the Second Injury Fund for workmen's compensation benefits paid during an appeal of an award does not constitute a confiscatory taking of property without due process of law because the Second Injury Fund is a creature of the state and therefore no property right inures to the employers or insurance carriers who have contributed to it (1975 PA 34; MCL 418.862; MSA 17.237[862]).

13. CONSTITUTIONAL LAW—STATUTES—EQUAL PROTECTION.
   The burden is on a party challenging legislation dealing with property rights, not fundamental rights, on equal protection grounds to show that the classification is arbitrary and does not bear a rational relation to the object of the legislation.

14. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—EQUAL PROTECTION.
   All employers and insurance carriers are required to pay work-

men's compensation claimants 70% of the awarded benefits pending any appeal taken by the employer or insurance carrier; the class as conceived by the Legislature treats self-insurers and insurance carriers as similarly situated persons and is obviously reasonable; therefore the legislation does not violate the Equal Protection Clauses of the United States and Michigan Constitutions (US Const, Am XIV; Const 1963, art 1, § 2; 1975 PA 34; MCL 418.862; MSA 17.237[862]).

15. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—EQUAL PROTECTION.

The legislative classification scheme which requires employers and insurance carriers to pay workmen's compensation claimants 70% of the awarded benefits during an appeal taken by the employer or insurance carrier does not violate the Equal Protection Clauses because the hearing referee has previously determined that the employee is entitled to an award, the disabled employee needs the money immediately, and the imposition on the employer of a heavier risk of appeal under this procedure is clearly not irrational or unrelated to the object of the act (1975 PA 34; MCL 418.862; MSA 17.237[862]).

16. STATUTES—IMPAIRMENT OF CONTRACTS.

The Legislature possesses the requisite authority to alter the method of enforcing pre-existing contractual rights and can elect to modify the remedies for the enforcement of a contract without violating constitutional prohibitions of the impairment of contract (US Const, art 1, § 10; Const 1963, art 1, § 10).

17. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—IMPAIRMENT OF CONTRACTS—STATUTES—RETROACTIVE AMENDMENT.

The amendment of the Worker's Disability Compensation Act which requires payment of 70% of the awarded benefits during appeals taken by employers and insurance carriers does not retroactively change the amount of the employer's liability, but only effectuates a procedural change in essentially remedial legislation; therefore the amendment neither impairs existing contracts nor retroactively changes existing substantive law (US Const, art 1, § 10; Const 1963, art 1, § 10; 1975 PA 34; MCL 418.862; MSA 17.237[862]).

18. WORKMEN'S COMPENSATION—APPEAL AND ERROR—BENEFITS DURING APPEAL—DISMISSAL OF APPEAL.

The power of the Workmen's Compensation Appeal Board to dismiss appeals for failure to comply with the act which requires payment of 70% of the awarded workmen's compensa-

tion benefits during an appeal is necessarily implied from the act itself; were it not, the act would become meaningless and the very problem the act was designed to alleviate would persist—the disabled worker would remain unpaid while he seeks judicial enforcement of the act (1975 PA 34; MCL 418.862; MSA 17.237[862]).

19. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—DISMISSAL OF APPEAL—CONDITION PRECEDENT.

The act which requires payment of 70% of the awarded workmen's compensation benefits during an appeal operates as a condition precedent for the perfection of an appeal and failure to comply with the act's mandate necessitates a dismissal of the appeal (1975 PA 34; MCL 418.862; MSA 17.237[862]).

20. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIMBURSEMENT—SECOND INJURY FUND.

The clear wording of the amendment of the Worker's Disability Compensation Act which provides that an appeal does not operate as a stay of 70% of benefits awarded mandates exclusive reimbursement from the Second Injury Fund for payment of 70% of the awarded workmen's compensation benefits during an appeal in excess of the amount finally determined (1975 PA 34; MCL 418.862; MSA 17.237[862]).

DISSENTING OPINION BY COLEMAN, J.

21. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—DUE PROCESS.

*An act which requires an employer or insurance carrier to pay workmen's compensation benefits before the basic fact-finding and legal review procedures have been completed and fails to provide a full refund for insurers who have been wrongly forced to pay benefits during an appeal is confiscatory in fact and violates the due process clause of the Constitution (Const 1963, art 1, § 17; MCL 418.862; MSA 17.237[862]).*

22. WORKMEN'S COMPENSATION—APPEAL AND ERROR—QUESTIONS OF FACT.

*The fact-finding process in disputed workmen's compensation cases is completed in the Workmen's Compensation Appeal Board; the Worker's Disability Compensation Act gives an employer a right to have a claim reviewed by the appeal board which may consider additional evidence not in the record considered by the hearing referee (MCL 418.255, 418.859; MSA 17.237[255], 17.237[859]).*

23. WORKMEN'S COMPENSATION—APPEAL AND ERROR—QUESTIONS OF
    LAW.

    *The courts are constitutionally assigned the function of reviewing
    workmen's compensation claims for legal errors; however,
    whenever possible, the courts should have the benefit of the
    Workmen's Compensation Appeal Board's views before opting
    for one or another interpretation of a complex and frequently
    amended statute (Const 1963, art 6, § 28).*

24. WORKMEN'S COMPENSATION—APPEAL AND ERROR—DUE PROCESS.

    *The procedures established by Constitution and the Worker's
    Disability Compensation Act are the minimum necessary to
    insure that workmen's compensation claims are handled fairly;
    the Workmen's Compensation Appeal Board has an important
    review function, and the appellate courts have a different but
    equally important review function (Const 1963, art 1, § 17;
    Const 1963, art 6, § 28; MCL 418.255, 418.859; MSA 17.237[255],
    17.237[859]).*

25. WORKMEN'S COMPENSATION—APPEAL AND ERROR—CONSTITUTIONAL
    LAW.

    *A judicial failure to speedily process workmen's compensation
    cases or legislative failure to provide a constitutional statutory
    remedy does not justify depriving one party of due process of
    law to favor the convenience of another in a disputed case.*

26. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIM-
    BURSEMENT—DUE PROCESS.

    *The act which requires employers and insurance carriers to pay
    70% of the awarded workmen's compensation benefits during
    an appeal is plainly confiscatory in nature; there is no balanc-
    ing of rights, no trade-off between legal rights of the parties, no
    way that the insurers can be made whole (Const 1963, art 1,
    § 17; 1975 PA 34; MCL 418.862; MSA 17.237[862]).*

27. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIM-
    BURSEMENT—SECOND INJURY FUND.

    *An employer or workmen's compensation insurance carrier, if
    successful on appeal from an award of workmen's compensation
    benefits, is reimbursed out of the Second Injury Fund which it
    helps finance; an employer has a right to be fully reimbursed
    for being required to pay benefits to undeserving claimants,
    which means a dollar back for a dollar paid (1975 PA 34; MCL
    418.862; MSA 17.237[862]).*

28. WORKMEN'S COMPENSATION—BENEFITS DURING APPEAL—REIM
BURSEMENT—SECOND INJURY FUND.

> *The Second Injury Fund was not created to reimburse employers
> and insurance carriers if successful on appeal from an award of
> workmen's compensation benefits; the fund was designed to
> spread the cost of worker's benefits among all carriers and to
> encourage the hiring of the handicapped.*

*Kasoff, Young, Gottesman, Kovinsky, Friedman
& Walkon, P. C.,* for plaintiff McAvoy.

*Marston, Sachs, Nunn, Kates, Kadushin &
O'Hare, P. C.* (by *Robert G. Hodges*) for plaintiff
Stricklin.

*Lopatin, Miller, Bindes, Freedman & Bluestone*
(by *Michael A. Gantz*) for plaintiff Turner.

*Honigman, Miller, Schwartz & Cohn* (by *Robert
A. Fineman*) for plaintiff Michigan Self-Insurers'
Association.

*Conklin, Benham, McLeod, Ducey & Ottaway,
P. C.* (by *Thomas P. Chuhran*) for defendants H. B.
Sherman Company, American Mutual Liability
Company, and American Chain & Cable Company,
Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pederson* (by *Edward K. Pederson, Jr.,* and *Jeannette A. Paskin;* and *Frazer F. Hilder,* General
Counsel, and *Thomas W. Watkins* and *James A.
Durkin,* of counsel) for defendant General Motors
Corporation.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *E. J. Setlock,*
Assistant Attorney General, for defendants Bureau

of Workmen's Compensation, Workmen's Compensation Appeal Board, and Second Injury Fund.

Amici Curiae:

Michigan AFL-CIO, by *Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes)* and *Theodore Sachs.*

Michigan Manufacturer's Association, Employers Association of Detroit, Employers Association (Grand Rapids), Foundrymen's Association of Michigan, Industrial Insurance Agents of Michigan, Michigan Asphalt Paving Association, Inc., Michigan Auto Dealers Association, Michigan Automotive Wholesalers Assn., Michigan Beer & Wine Wholesalers Assn., Michigan Chapter Associated General Contractors, Michigan Dairy Foods Association, Michigan Food Dealers Association, Michigan Funeral Directors Assn., Inc., Michigan Independent Telephone Assn., Michigan Institute of Laundering & Drycleaning, Michigan Licensed Beverage Association, Michigan Oil & Gas Association, Michigan Plumbing & Mechanical Contractors Association, Inc., Michigan Retail Hardware Association, Michigan Retail Lumber Dealers Association, Michigan Retailers Association, Michigan Savings & Loan League, Michigan Tobacco-Candy Distributors & Vendors Association, Inc., Michigan Trucking Association, Inc., and Music Operations of Michigan, by *Beaumont, Smith & Harris* (by *Dwight H. Vincent* and *J. Walker Henry).*

BLAIR MOODY, JR., J. We granted leave in these consolidated worker's compensation cases in order to consider whether 1975 PA 34, MCLA 418.862; MSA 17.237(862), comports, on its face and as

applied, with certain fundamental constitutional mandates. 1975 PA 34 is commonly referred to as the "70% statute". It provides that a claim for review filed by a self-insured employer or a carrier from a worker's compensation award entered by a hearing referee shall *not* operate as a stay of payment to the claimant of 70% of the weekly benefit.

The statute also provides, in its disputed part, that if the weekly benefit is reduced or rescinded by a final determination upon appeal, the self-insured employer or carrier shall be entitled to reimbursement from the Second Injury Fund for compensation paid during the appellate process in excess of the amount finally determined.

The appellant employers, insurance carriers and self-insurers contend that the foregoing legislative enactment is unconstitutional. They maintain, *inter alia,* that the instant statute violates (a) various due process guarantees, both procedural and substantive, as articulated in both the United States Constitution and the Michigan Constitution of 1963; (b) traditional equal protection guarantees as set forth in both Constitutions, and (c) certain proscriptions against the impairment of contracts as found in both Constitutions. Lastly (d) the appellants maintain the Worker's Compensation Appeal Board exceeds the scope of its authority when it dismisses appeals for noncompliance with the 70% statute.

We have examined all of appellants' contentions in the light of the broad philosophical tenets underpinning Michigan's Worker's Disability Compensation Act; we have scrutinized both the specific language of the 70% statute and the legislative intent underlying the act; and we have looked to established legal precedent in both our jurisdic-

tion and others in examining the appellants' legal and constitutional positions. We conclude that 1975 PA 34, the "70% statute", is constitutional on its face and as applied.

Accordingly, we affirm the Court of Appeals decision which held the instant statute constitutional and found that the Worker's Compensation Appeal Board does not exceed its authority by dismissing the appeals of appellants who do not comply with the statute's mandates.

## I. FACTS

There is no dispute as to the "facts" in the instant case. Therefore, we adopt the Court of Appeals statement of facts:

"This case consists of several consolidated appeals from orders of the Workmen's Compensation Appeal Board (hereinafter Appeal Board) dismissing the defendants' appeals from decisions of hearing referees for failure to comply with 1975 PA 34; MCLA 418.862; MSA 17.237(862). The appeals are by leave granted and challenge the constitutionality of that statute and the Appeal Board's authority to enforce the statute by dismissing appeals.

"The factual setting for this appeal is illustrated by the history of *Turner v General Motors.* Turner was awarded weekly benefits by a workmen's compensation hearing referee. Defendant filed an application for review with the Appeal Board. Plaintiff subsequently filed a motion to dismiss for defendant's failure to comply with 1975 PA 34. Defendant objected to the motion, asserting that the act was unconstitutional. The Appeal Board notified defendant that failure to comply with the act might result in dismissal of its appeal. Defendant failed to comply with the act, and the Appeal Board dismissed defendant's appeal. The instant appeal followed." *Turner v General Motors Corp,* 70 Mich App 532, 535; 246 NW2d 631 (1976).

As the Court of Appeals implies, the factual sequences in *McAvoy v H B Sherman Co* and *Stricklin v American Chain & Cable Co,* the consolidated cases, are identical to the *Turner v General Motors* sequence. Furthermore, the legal arguments presented by the defendant-appellant employers and insurance carriers as to the constitutionality of 1975 PA 34 are virtually identical in all these cases.

This Court granted leave in the *Turner et al* cases on October 13, 1976, and consolidated them with *Michigan Self-Insurers' Ass'n v Bureau of Workmen's Compensation,* 70 Mich App 565, 566–567; 246 NW2d 316 (1976). The legal issues in *Self-Insurers* are identical with those in *Turner et al.* The Court of Appeals pointed out this fact in its brief opinion in *Self-Insurers:*

"Defendants [Bureau of Worker's Compensation] appeal as of right from the December 8, 1975, order of the Ingham County Circuit Court granting a summary judgment in favor of the plaintiff [Michigan Self-Insurers' Association] and declaring unconstitutional 1975 PA 34; MCLA 418.862; MSA 17.237(862), and permanently enjoining enforcement of the act by the defendants.

"This Court's opinion in *Turner v General Motors,* 70 Mich App 532; 246 NW2d 631 (1976), answers the meritorious issues raised by the parties to this appeal.

\* \* \*

"[T]he act is not invalid under Const 1963, art 6, § 28. Accordingly, the judgment of the trial court is reversed and the injunction is hereby dissolved. No costs."

Therefore, the Michigan Self-Insurers' Association joins the various employers and carriers as the appellants herein. Turner, McAvoy, Stricklin and the Worker's Compensation Bureau *et al* are the appellees.

## II. Due Process

This Court perceives the principal issue in this case to be whether 1975 PA 34, MCLA 418.862; MSA 17.237(862) provides for a taking of property from self-insured employers or carriers without procedural or substantive due process of law.

1975 PA 34 provides for the following legislative schema:

"A claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the referee's award shall be withheld until final determination of the appeal. If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5. If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid. Interest shall not be paid on amounts paid pending final determination. Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau."

Appellants maintain that this statute denies them procedural due process[1] in that it requires payment of 70% of the hearing referee's award pending appeal—without the traditional stay of

---

[1] US Const, Am XIV; Const 1963, art 1, § 17.

payment during the appellate process. Appellants further contend that this "70%" provision effectively denies them their right to appeal as guaranteed by Const 1963, art 6, § 28.

Appellants also maintain that the 70% statute denies them substantive due process in that any reimbursement which they receive after a hearing referee's award is reversed must come from the Second Injury Fund, a fund which the appellants themselves are required to keep solvent. Appellants contend that this reimbursement procedure constitutes a confiscatory taking of property and thus renders the statute unconstitutional. We will examine these two due process issues separately.

## A. Procedural Due Process: Stays

"A claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award."

The threshold question for this Court is whether the foregoing language of the 70% statute violates procedural due process in that it does not provide for an automatic stay of a hearing referee's award to a claimant pending an appeal by the employer.

The test by which courts decide whether a particular legislative enactment comports with due process has been stated and restated *ad infinitum.* We prefer the traditional statement found in *Nebbia v New York,* 291 US 502, 525; 54 S Ct 505; 78 L Ed 940 (1934):

"The Fifth Amendment, in the field of federal activ-

ity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts."

See also *Grubaugh v City of St Johns,* 384 Mich 165; 180 NW2d 778 (1970).

In determining, then, whether the 70% statute is "unreasonable, arbitrary, or capricious", and whether the means selected bear "a real and substantial relation to the object sought to be attained", we must look to (1) the overall objective of the Worker's Disability Compensation Act and (2) the specific objective of the 70% provision itself, and how that objective is implemented.

Professor Larson, in his classic treatise on worker's compensation law, succinctly stated the social philosophy underlying any worker's compensation system:

"The ultimate social philosophy behind compensation liability is belief in the wisdom of providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obliged to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product." 1 Larson, Workmen's Compensation Law, § 2.20.

Any worker's compensation schema has, therefore, as its primary goal the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs, regardless of any traditional tort concepts of liability. The objective of the social legislation is to provide the disabled worker with benefits *during* the period of his disability so that the worker and his dependents may survive (literally) the catastrophe which the temporary cessation of necessary income occasions. The inherent rationality of worker's compensation legislation has stood unchallenged for decades. Its real and substantial relation to a valid legislative objective has successfully withstood due process challenges and is firmly established as a bellwether of Twentieth Century social legislation. See, for example, *New York C R Co v White,* 243 US 188; 37 S Ct 247; 61 L Ed 667 (1917).

Historically, however, a profound injustice has plagued this piece of social legislation in Michigan, as well as in other states. Due to both the increasing number and sophistication of appeals by employers and carriers of worker's compensation awards, workers who have been awarded benefits and are indeed ultimately found entitled to such benefits because of legitimate disabilities, must often wait years to begin receiving compensation while the appellate process slowly grinds to a final conclusion.

In the interim, workers and their families are denied the benefits which were intended under the initial philosophy of worker's compensation to sustain them through this period of disability. The appellate process hamstrings the delivery of immediate benefits and contributes to the very social ill

which worker's compensation acts sought to remedy.[2]

It is from this perspective that we must examine the advent of the 70% statute. 1975 PA 34 represents an attempt by the Legislature to instill new vitality into the Worker's Disability Compensation Act. The Legislature evidently realized that the ultimate goal of the worker's compensation schema was being thwarted by an appellate process which was merely a traditional carry-over from existing tort concepts of liability.[3] Workers were not receiving the benefits awarded by the referees and were often subject to being whipsawed into settlements for lesser benefits in order to avoid the lengthy appellate process.

The Rhode Island Supreme Court recognized these very same abuses in commenting upon the enactment by its Legislature of a similar "no-stay" provision:

"The injured worker was confronted with an even more acute problem when the employer appealed. He did not receive his compensation promptly. At a time when he was unable to work and usually in need of medical attention with no income to support himself and his family, he was faced with what appeared to be a seemingly endless and costly litigation. As a result, either claims were abandoned or the injured worker was harassed into accepting an inadequate lump-sum settlement. It was obvious that the Legislature, when it enacted § 28-35-33, intended to eliminate the evils connected with the then existing law by providing that an injured worker who has successfully prosecuted his petition would be promptly compensated * * * ." *Mer-*

---

[2] The Court of Appeals has taken note of these inequities on several occasions. *See Morris v Baker Auto Parts,* 57 Mich App 65, 72–74; 225 NW2d 179 (1974), *DeMott v Battle Creek Goodwill Industries,* 51 Mich App 127, 130; 214 NW2d 554 (1974).

[3] No court rule or Worker's Compensation Appeal Board regulation provides for an automatic stay of benefits pending appeal. The stay is by custom only. For further discussion, *see* 4 Am Jur 2d, Appeal and Error, §§ 365–366, pp 839–841.

chants *Mutual Ins Co v Newport Hospital,* 108 RI 86, 91; 272 A2d 329, 331 (1971).

Accord *Employers' Mutual Ins Co v Industrial Commission,* 65 Colo 283; 176 P 314 (1918).

The Michigan Legislature remedied this social ill by providing that "[a] claim for review * * * shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award".

It is *not* this Court's role to decide whether the Legislature acted wisely or unwisely in enacting this statute. We will not substitute our own social and economic beliefs for those of the Legislature, which is elected by the people to pass laws. *Ferguson v Skrupa,* 372 US 726; 83 S Ct 1028; 10 L Ed 2d 93 (1963). We are only concerned that the enacted law shall not be "unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained".

In the case at bar, the Legislature decided not to stay, pending appeal, 70% of the weekly benefits due a claimant, after a hearing referee's award. We do not find that this legislative enactment violates procedural due process. The employers and carriers receive a fair, impartial and full initial determination before an administrative judge (hearing referee); this they do not deny. Their right to appeal that award remains intact. The worker/claimant does not receive the entire award; only that percentage of the award which statistically reflects the ratio of ultimate affirmances.[4] Given the general social philosophy under-

---

[4] The chairperson of the Worker's Compensation Appeal Board commissioned the Administrative Services staff of the Michigan Department of Labor to conduct a study of the number of decisions rendered by the WCAB during calendar year 1974. Those statistics

lying the Worker's Disability Compensation Act and the abuses which have arisen under the traditional 100%-stay-pending-appeal system, we cannot agree that the 70% statute impinges upon any of the appellants' traditional due process rights. Due process does not necessarily guarantee appellant employers and carriers a right to a complete stay of benefits while an award, which was entered with full due process accorded, is appealed to a higher tribunal.

In fact, this Court recognizes that it is arguable that the staying of *all* benefits awarded, pending appeal, could conceivably constitute a denial of *claimants'* due process rights. In *California Dep't of Human Resources Development v Java,* 402 US 121, 134; 91 S Ct 1347; 28 L Ed 2d 666 (1971), the United States Supreme Court alludes to the same problem.[5] While *Java* admittedly arose out of different factual context and dealt with the complex interplay of Federal-state guidelines regarding the prompt payment of unemployment benefits, the underlying policy issue is the same one at issue here. The Court required the payment of substitute wage benefits to a claimant without a stay pending appeal when a claimant has been awarded those benefits after a full initial hearing. The Supreme Court reasoned thus:

demonstrate employers appealed 381 hearing referees' awards; 46 decisions were reversed. The affirmance rate on appeal was 88%. Amicus Curiae Brief of Michigan AFL-CIO, pp 1b–3b.

[5] The United States Supreme Court found it unnecessary to decide in *Java* the question of whether the *claimants'* procedural due process rights were impinged by the failure to pay unemployment benefits "when due", pending appeal by the employer. The Court merely alluded to the problem and then decided the issue through statutory construction of the conflicting state-Federal provisions.

The three-judge district court, however, held that by not providing benefits after the initial hearing, the state procedure constituted a denial of procedural due process. The district court relied on *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970). *See* 317 F Supp 875 (ND Cal, 1970).

"It would frustrate one of the Act's basic purposes—providing a 'substitute' for wages—to permit an employer to ignore the initial interview or fail to assert and document a claimed defense, and then effectuate cessation of payments by asserting a defense to the claim by way of appeal. If the employer fails to present any evidence, he has in effect defaulted, and neither he nor the State can with justification complain if, on a *prima facie* showing, benefits are allowed. *If the employer's defenses are not accepted and the claim is allowed, that also constitutes a determination that the benefits are 'due.'*" (Emphasis added.)

The "no-stay" provision of 1975 PA 34 not only comports with procedural due process guarantees as regards employers and carriers, but it also extends a quantum of due process to disabled employees who have been awarded benefits but are denied them by a strangulating appellate process.

Appellants further contend that the "no-stay" provision of 1975 PA 34 (a) effectively denies their right to judicial review of administrative decisions as guaranteed by the Michigan Constitution of 1963, art 6, § 28, and (b) allows for the payment of 70% benefits even after an appellate tribunal has reversed the hearing referee. Both contentions lack merit.

Appellants are correct in their assertion that Const 1963, art 6, § 28, guarantees judicial review of administrative decisions:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by

competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."

However, we find nothing in the 70% statute or the Worker's Disability Compensation Act as a whole which violates this constitutional mandate. The Worker's Disability Compensation Act *does* provide for a review of the decisions made by the Worker's Compensation Bureau:

"If a claim for review is filed, the board shall promptly review the order, together with the records of the hearing; it may hear the parties, together with such additional evidence as it in its discretion may allow them to submit and shall file its order with the records of the proceedings. The review and hearing may be held at its offices in Lansing, or elsewhere, as the board deems advisable. Where the employer or carrier files a claim for review to the board or appeals to the court of appeals or supreme court, a copy of the testimony, depositions and other documents necessary for the appeal shall be furnished by the employer or carrier to the employee or his attorney." MCLA 418.859; MSA 17.237(859).

"The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board, if application is made by the aggrieved party within 30 days after such order by any method permissible under the rules of the courts of the laws of this state." MCLA 418.861; MSA 17.237(861).

The constitutional provision cited was concerned with (1) providing for judicial review of rulings by administrative agencies, and (2) establishing a standard of review for the findings of fact made by administrative agencies. Nowhere in this constitu-

tional stricture is it stated or implied that this right to review includes an automatic stay of the initial award made by the hearing referee (administrative judge). It would be inaccurate to contend that art 6, § 28, guarantees an unencumbered, *de novo* right to appeal. The very wording of the provision states otherwise. Article 6, § 28, specially provides that such rulings "shall be subject to direct review by the courts *as provided by law*". (Emphasis added.)

The phrase "as provided by law" clearly vests the Legislature with the authority to exert substantial control over the mechanics of how administrative decisions are to be appealed. *Viculin v Dept of Civil Service*, 386 Mich 375; 192 NW2d 449 (1971). We believe that it is perfectly reasonable, given the aforementioned problems with delivering worker's compensation benefits to disabled employees, that the Legislature decide that the original award shall not be stayed pending the appeal. Certainly such a "no-stay" provision does not constitute a denial of the right to appeal.

It is recognized that the 70% "no-stay" provision of 1975 PA 34 might limit or inhibit strategically or tactically the number of appeals taken by an employer or carrier. However, as we construe the legislation, this is precisely one of the ancillary goals of the act: to discourage marginal or frivolous appeals.

Certainly no employer or carrier will be discouraged from pursuing a meritorious appeal. The 70% no-stay "payment shall commence as of the date of hearing referee's award and shall continue until final determination of the appeal". If an employer or carrier is successful upon appeal and "the weekly benefit is reduced or rescinded by a final determination", the employer or carrier will have

only paid the 70% benefits for the interim period between the initial award and its subsequent reduction or rescission. It is patently illogical to assume that an employer or carrier will not press a meritorious appeal simply because he is required to pay 70% benefits before an appeal can be completed. Nor does such payment render the appellate process meaningless when one considers the potential liability present in many cases.

Furthermore, we do not agree with the construction that the interim 70% payments continue even though the hearing referee's award is overturned at some juncture during the appellate process. The statute specifically provides that "[p]ayment shall commence as of the date of the hearing referee's award and shall continue *until final determination of the appeal* * * * ". (Emphasis added.)

It would yield an absurd result to construe the phrase "until final determination of the appeal" as "until completion of the entire appellate process". See *In re Petition of State Highway Commission,* 383 Mich 709; 178 NW2d 923 (1970). The entire appellate process could conceivably include appeals either by the claimant or by the employer or carrier to the Worker's Compensation Appeal Board, Court of Appeals and Supreme Court. The logical consequence of the statute's wording indicates that a claimant is entitled to 70% benefits awarded by a hearing referee until such time as the hearing referee's award is reduced or rescinded upon an appeal. If the hearing referee's award, the prerequisite for putting the entire legislative schema in motion, is vacated at any appellate stage, the 70% benefits are terminated. If at any point on appeal the benefits are reduced, the 70% no-stay provision applies only to the new award (provided, of course, another appeal is taken).

Likewise, if a hearing referee's award which was vacated or modified at a lower appellate level is reinstated at a higher appellate level, the 70% benefits resume.[6] This interpretation is consistent with the Legislature's intent as we read the statute. The hearing referee's initial award is the catalyst which initiates the 70% benefits. During the various appellate steps, it is that initial hearing referee's award and its eventual disposition which governs when 70% benefits are to be paid or not paid, until the appellate process is completed.

Thus, it can readily be seen that the 70% "no-stay" provision of 1975 PA 34 ultimately encourages all parties to expedite appeals. Employers and carriers certainly will seek prompt appellate relief in cases where they believe unjustified benefits are awarded. Claimants will also seek prompt appellate finalization in most cases[7] because they will wish to obtain the 30% benefits held pending final disposition. In the meantime, the 70% benefits initially awarded will sustain the claimants during this sometimes lengthy process and remove any unfair bargaining leverage employers or carriers exercise during the interim.

We find nothing unreasonable, arbitrary or capricious about this legislative plan and believe the means selected, to wit, the 70% no-stay provision,

[6] We do not believe it was the Legislature's intent that "back" 70% benefits should be paid upon reinstatement of a hearing referee's award. The Legislature's goal in enacting 1975 PA 34 was to provide for *sustaining* benefits. "Back" benefits (*i.e.,* 70% benefits not paid during the period between appeals) can always be obtained by a successful claimant once the appellate process is completed and all accrued benefits are paid.

*See* fn 18, *infra,* and *Karbel v Greyhound Food Management,* 1975 WCABO 1851, for further explication of this point in part III of this opinion.

[7] An 88% affirmance rate encourages claimants who need funds to expedite appeals in order to receive the additional 30% benefits due them.

bears a real and substantial relation to the object sought to be attained.

## B. Substantive Due Process: Reimbursement

"If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5."

Appellant carriers contend in this case that the reimbursement provision of 1975 PA 34 provides for an unconstitutional taking of property without substantive due process of law because the reimbursement to which appellants are entitled, if they are successful on appeal, must come from the Second Injury Fund,[8] and not from the recipients of the 70% benefits. Appellants reason that since they are required to finance the Second Injury Fund they are, in fact, required to reimburse themselves for benefits paid but not owed. This, they maintain, constitutes a confiscatory taking of property without due process.

While we agree with appellant carriers' reading of the statutory provision, we do not agree that provision provides for an unconstitutional "taking".

The clear wording of the statute provides that reimbursement for benefits paid during the pendency of an appeal, which subsequently reduces or rescinds those benefits, "shall be paid * * * from the second injury fund". The word "shall" clearly means that payment is mandatory or imperative from the fund. *Southfield Twp v Drainage Board*

---

[8] MCLA 418.501 *et seq.;* MSA 17.237(501) *et seq.*

*for 12 Towns Relief Drains,* 357 Mich 59; 97 NW2d 821 (1959).

However, appellant carrier's position regarding the constitutionality of this reimbursement scheme is premised on two incorrect assumptions: (1) that reimbursement is constitutionally mandated and (2) that reimbursement from a state insurance fund, such as the Second Injury Fund, constitutes "self-reimbursement".

While 1975 PA 34 provides for reimbursement, we submit that the "no-stay" provision of the statute would still be constitutional even if *no* method of reimbursement were provided for in the statute.[9] The Legislature reasonably found that the withholding of compensation due claimants pending appeal operated to frustrate the general purpose of the act. Therefore, it is not unreasonable that the Legislature, within the constitutional exercise of its police power, could require employers and their carriers to bear the risk of paying benefits during the limited pendency of an appeal.

---

[9] While the WCAB has a central role in the worker's compensation hearing and review process, the Legislature could, without violating the due process clause, provide for a hearing procedure that did not involve any administrative appeal from a hearing officer's decision.

Furthermore, it should not be forgotten that persons convicted of crimes are generally deprived of their liberty and required to commence service of prison sentences even though they have a right, under Michigan's Constitution, of appeal. "In every criminal prosecution, the accused shall have the right * * * to have an appeal as a matter of right." Const 1963, art 1, § 20. This provision is not qualified by "as provided by law" as in Const 1963, art 6, § 28. Although there is discretion to allow bond on appeal, relatively few persons sentenced to prison are allowed to be at liberty during their appeals. If a conviction is reversed and the defendant is not again convicted, the state has not been required to provide compensation for loss of liberty. The unavailability of bond on appeal and the resulting loss of liberty has not been regarded as a denial of due process.

Also, child custody, support, alimony and injunctive orders are generally enforced during the pendency of an appeal.

In that context this Court perceives no due process issue in requiring an employer during the pendency of its appeal to pay 70% of a referee's award.

The New Hampshire Supreme Court reached a similar conclusion in construing the "no-stay" provision in its worker's compensation act. The Court held the lack of a reimbursement clause did not render its no-stay provision constitutionally infirm:

"Secondly, we agree that the statute makes no provision for recoupment of payments made, in the event that the decision of the commissioner is overturned on appeal. We hold that no such right of recoupment was implied or intended. *See Hagerty v Great American Indemnity Co,* 106 NH 425; 213 A2d 424 (1965). The absence of provision therefor is to us an indication of the legislative intent that no such right should arise.

"It has long been established that workmen's compensation is remedial in character, designed to provide, in substitution for unsatisfactory common-law remedies in tort, a liability without fault for limited compensation, capable of ready and early determination. *Mulhall v [Nashua Manufacturing] Co,* 80 NH 194, 196–199; 115 A 449, 453 (1921); *see Carbonneau v [Hoosier Engineering] Co,* 96 NH 240, 244; 73 A2d 802, 806 (1950). The provisions of the 1971 amendment were designed to further this purpose, and to assure prompt payment of compensation to workmen found to be entitled thereto, after administrative hearing of the parties involved.

"Granted that in the event of successful appeals by employers, the statute will place upon them a new or additional burden. The legislature could reasonably find that the withholding of compensation by employers pending appeal had operated to frustrate the purposes of the law. Hence in the exercise of the police power, it could properly require employers, and more broadly the enterprises which they represent, to bear for a limited period the risk of payments made during appeal, rather than the injured employee, who as the plaintiffs point out is usually in no financial position to carry that risk." (Citations omitted.) *Hartford Accident & Indemnity Co v Duvall,* 113 NH 28, 31; 300 A2d 732, 734 (1973).[10]

---

[10] The New Hampshire Supreme Court relied in part on the *Java*

The rationale and holding of the New Hampshire Supreme Court, to which we subscribe, reflects what we perceive to be the majority position in most states which have incorporated no-stay provisions into their worker's compensation schemes. The Legislature has an option as to whether or not it wishes to provide for reimbursement. However, the Legislature's choice regarding provision for reimbursement in no way affects the ultimate constitutionality of the no-stay provision. See, for example, *Merchants Mutual Ins Co v Newport Hospital,* 108 RI 86; 272 A2d 329 (1971). Also see *St Paul Fire & Marine Ins Co v Treadwell,* 263 Md 430; 283 A2d 601 (1971); *Tompkins v George Rinner Construction Co,* 196 Kan 244; 409 P2d 1001 (1966), and the cases cited therein.

The Michigan Legislature elected to provide for a unitary system of reimbursement for carriers via the Second Injury Fund; this was the Legislature's prerogative and we respect it. However, the constitutionality of 1975 PA 34's no-stay provision does not hinge on the Legislature's so providing.[11]

case for its rationale in *Duvall.* We also rely on concepts reflected in *Java* for much of our due process holding in the case at bar, which presents even more compelling circumstances. Insofar as *Chrysler Corp v Unemployment Compensation Commission,* 301 Mich 351; 3 NW2d 302 (1942), is inapposite, our reliance on *Java* renders that decision nugatory.

[11] The Court of Appeals erroneously reasoned that "[c]onstruing 1975 PA 34 as limiting reimbursement only from the Second Injury Fund might well mandate a finding of unconstitutionality." *Turner, supra,* 539.

The Court of Appeals, however, did not hold the statute unconstitutional because it found that "recoupment" from employees-claimants was provided for in MCLA 418.833(2); MSA 17.237(833)(2):

"When an employer or carrier takes action to recover overpayment of benefits, no recoupment of money shall be allowed for a period which is more than 1 year prior to the date of taking such action."

We do not read the foregoing statute as broadly as the Court of Appeals. First, this provision is obviously intended to be a statute of limitations.

Secondly, and more importantly, this statute originally was de-

While we need not address appellant carriers' second assumption since reimbursement is not constitutionally mandated, nevertheless we would reject outright the notion that reimbursement from the Second Injury Fund constitutes "self-reimbursement" and is therefore a confiscatory taking.

The Second Injury Fund is a *state* insurance fund created by the Legislature to insure carriers and self-insured employers against certain losses occurring due to worker's compensation claims. MCLA 418.501 *et seq.;* MSA 17.237(501) *et seq.* See also *Copperweld Steel Co v Industrial Commission,* 143 Ohio St 591; 56 NE2d 154 (1944). The Second Injury Fund does *not* belong to the carriers. No employer or carrier has a direct or vested interest in the fund. Rather, the carriers and self-insured employers pay annual assessments to the fund. Once paid, these assessments become state or public moneys. Like any insurance scheme, the Second Injury Fund spreads the risk of worker's compensation among all the self-insured employers and carriers.

It would be improper to conclude that because self-insured employers and carriers are required by law to pay into the fund, reimbursements received from the fund constitute "self-reimbursement". Pursuant to traditional insurance concepts, the *state* reimburses the self-insured employers or carriers from assessed premiums. Some employers and carriers receive substantial reimbursements

signed and passed in 1969 (some six years before 1975 PA 34) to provide for the *recoupment* of benefits overpaid after an award was finalized, *i.e.,* after all stays were ended, appeals completed and the payment of benefits commenced. The exclusive *reimbursement* procedures outlined in 1975 PA 34 apply only to the new 70% benefits paid during the appellate process. Therefore, there can be no overlap between the 1969 recoupment provision and the 1975 reimbursement amendment.

from the fund; others receive nothing. Nevertheless all involved are required to pay insurance premiums into the fund, predicated upon their proportional share of the total funds disbursed during the previous year.[12] Since the Second Injury Fund is a creature of the state, no property right would inure to the employers or carriers. Without a corresponding property right, it could not be maintained that the instant reimbursement provision constitutes a confiscatory taking without due process of law.[13]

## III. EQUAL PROTECTION

Appellants raise several issues concerning the constitutionality of 1975 PA 34 under the equal protection clauses of the United States and Michigan Constitutions.[14] Only one of those issues merits discussion.

The appellant self-insured employers and carriers submit that 1975 PA 34 denies them equal

---

[12] *Second Injury Fund, computation.*

"(1) As soon as practicable after January 1 each year, the director shall assess upon and collect from each carrier a sum equal to that proportion of 175% of the total disbursements made from the second injury fund during the preceding calendar year, less the amount of net assets in excess of $200,000.00 in that fund as of December 31 of the preceding calendar year, which the total compensation benefits, exclusive of payments made pursuant to sections 315, 319 and 345, paid by each such carrier in the state bears to the total of such compensation benefits paid by all carriers in the state." MCLA 418.551; MSA 17.237(551).

[13] Both appellants and appellees address the issue of whether self-insured employers or carriers can "stay" a hearing referee's award pending appeal upon a showing of "irreparable harm". We need not address this question. Since the employers may obtain reimbursement from the second injury fund for all possible losses if an award is reduced or rescinded, the possibility of irreparable harm becomes negligible in the vast majority of cases.

The potential insolvency of employees-claimants is not an issue if reimbursement is mandated from the Second Injury Fund, as it is in the instant case.

[14] US Const, Am XIV; Const 1963, art 1, § 2.

protection of the law because the legislative classi-
fications are arbitrary, and not reasonably related
to the object of the legislation. Specifically, the
appellants suggest that the "70% statute" invidi-
ously discriminates among a common class of liti-
gants: namely, all appellants of worker's compen-
sation decisions. The appellants maintain that
employers and carriers are inordinately burdened
by the statute because they must pay 70% of the
hearing referee's award pending appeal and are
therefore discouraged from exercising their right
to appeal. On the other hand, some appellants
assert 1975 PA 34 encourages claimants to press
frivolous appeals since they continue to receive
benefits not due.

We have examined this argument, at least tan-
gentially, under our due process analysis and re-
jected it. We also reject this argument under equal
protection analysis.

The appellants' position is based upon two obvi-
ously erroneous premises: (1) that the legislative
classification drawn involves *all* appellants of
worker's compensation awards, and (2) that the
classification system, whatever it may be, is either
arbitrary or not reasonably related to the object of
the legislation.

The test to be applied in deciding whether a
particular statute comports with equal protection
guarantees was stated by this Court in *Alexander
v Detroit,* 392 Mich 30, 35–36; 219 NW2d 41 (1974):

"The question whether or not a particular legislative
enactment violates equal protection for want of proper
classification of subject individuals or entities is not
susceptible to facile determination. Voluminous case
law exists on the subject of the appropriate test to be
utilized in such an analysis. In three relatively recent
majority opinions of this Court, Chief Justice (then

Justice) T. M. Kavanagh pulled together the threads of past opinions of our Court and the United States Supreme Court, essentially elucidating two tests to guide judicial scrutiny of suspect enactments:

"(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?

"(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?" (Citations omitted.)

In *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975), this Court discussed the two-tiered approach to equal protection and its shifting burden of proof:

"If the interest is 'fundamental' or the classification 'suspect', the court applies a 'strict scrutiny' test requiring the state to show a 'compelling' interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.

"Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it'. A classification will stand unless it is shown to be 'essentially arbitrary'. Few statutes have been found so wanting in 'rationality' as to fail to satisfy the 'essentially arbitrary' test."

In the case at bar, it becomes immediately apparent that the thrust of the legislation challenged is primarily social and economic. The legislation involved deals with property rights, not fundamental rights. Therefore, the burden is on the appellants to show the classification is arbitrary and does not bear a rational relation to the object of

the legislation.[15] The appellants fail to meet their burden.

The appellants erroneously maintain that the class drawn by the legislature in 1975 PA 34 is *all* appellants of worker's compensation decisions. Accordingly, appellants contend that immunities-privileges extended to worker's compensation appellants who happen to be employees-claimants are denied to other appellants, *i.e.,* self-insurers and carriers. The problem with appellants' contention is that they misconceive the class drawn by the Legislature. The class is *not* "all appellants", but rather "all self-insured employers and carriers". Then the question naturally becomes whether all self-insured employers and carriers are treated the same? The answer to this rhetorical question is "yes"; all employers and carriers are required to pay claimants 70% benefits pending any appeal taken *by them (i.e.,* employers and carriers) from an award.[16] The class as conceived

[15] "Whatever label is attached to the analysis * * * 'the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action'. The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation." *Manistee Bank, supra,* 671.

[16] We reject outright the notion that self-insured employers are treated differently from carriers under 1975 PA 34 because of MCLA 418.611(1)(d); MSA 17.237(611)(1)(d):

"(d) Under procedures and conditions specifically determined by the director. Two or more employers in the same industry with combined assets of $1,000,000.00 or more may be permitted by the director to enter into agreements to pool their liabilities under this act for the purpose of qualifying as self-insurers. An employer member of the approved group shall be classified as a self-insurer. The director may grant authorization to become a member of such group upon a reasonable showing by an employer of his solvency and financial stability to meet his obligations as a member of the group. If the director determines it to be necessary, he may require the furnishing of a bond, reinsurance, or other security in such form and amount as may be reasonable. An employer permitted to become a member of a self-insurers' group under this act shall execute a written agreement in which the employer agrees to jointly and severally assume and discharge, by payment, any lawful award entered by the bureau

by the Legislature treats carriers and self-insurers as similarly situated persons and is obviously reasonable.

However, even granting appellants' premise that the class created by 1975 PA 34 ("all appellants") treats self-insured employers and carriers differently on appeal from employees-claimants, we would still find that the legislative classification scheme is not essentially arbitrary and bears a rational relation to the object of the legislation. The Court of Appeals ably discussed this point in its opinion:

"The object of the Workmen's Compensation Act is to provide compensation to persons suffering a disability arising from their employment. Such compensation, to be effective, obviously must be provided promptly. So the act provides. MCLA 418.801; MSA 17.237(801). Public Act 34 effectuates this purpose by providing for payment to the claimant of part of the award granted by a hearing referee. Why the claimant should not be entitled to such payment pending the employer's appeal is not answered by the defendants.

"Pending appeal, money representing part of the amount awarded by the hearing referee is going to be in the hands of either the employer or the employee. It certainly doesn't fly in the face of reason to conclude that the disabled worker should receive part of that award during that period of time. The hearing referee

against any member of the group. *If the case in which the award is entered is appealed by either party, then the award must first be upheld before a member of the group may be liable.*" (Emphasis added.)

A reasonable construction of this provision is that a member of a self-insurers' association cannot be held liable for an award entered against another member of the association until such time as any appeal taken is decided with finality. The obvious intent of this provision is to safeguard constituent members of a self-insurers' association from precipitous payments.

We also note that nowhere in this litigation do we find evidence that self-insurers are treated differently from carriers. The Michigan Self-Insurers' Association is, in fact, a party to this appeal.

has previously determined that the employee is entitled to the award. Because of his disability, the employee needs the money immediately, not months or years hence. Any discrimination against the employer by the imposition of a heavier risk of appeal under this procedure is clearly not irrational or unrelated to the object of the act." *Turner, supra,* 540–541.

Finally, appellants' claim that employees-claimants are encouraged by the 70% statute to press frivolous appeals is patently illogical. Unless the hearing referee initially finds disability, the 70% benefits are never "triggered". Therefore, when the hearing referee finds for the employee-claimant, the next move, *i.e.,* to appeal or not to appeal, belongs to the employer or carrier. The employees-claimants will always be the *appellees* at this stage.

As we explained *supra,* if the claimant's award is rescinded or reduced, the benefits are then terminated or modified. It is only at this stage that the claimants become the *appellants.* Hence, it becomes apparent that 1975 PA 34 does not encourage employees-claimants to drag along useless appeals.

## IV. Retroactivity

The appellants in these consolidated cases next challenge the Worker's Compensation Appeal Board's application of 1975 PA 34 to cases involving injuries or appeals which occurred prior to the effective date of the act, May 6, 1975.

Specifically, appellants contend that the application of the 70% statute to cases involving injuries incurred or appeals taken by employers before the effective date of the act constitutes an unconstitu-

tional impairment of contractual obligations.[17] Appellants reason that a self-insured employer's or carrier's liability to an injured employee cannot exceed the statutory limit in effect on the date of injury. Appellants maintain that this is true because the liability for benefits is essentially *contractual;* therefore the existing employment contract establishes the extent of that liability.

Appellants also contend that any retroactive application of the act improperly alters existing substantive law in that it changes the amount of an employer's liability, his right to reimbursement, and the right of the employer to defend against claims of liability.

As the Court of Appeals pointed out, appellants' arguments are once again inaptly premised. (1) The Legislature possesses the requisite authority to alter the *method* of enforcing pre-existing rights. The Legislature can elect to modify the remedies for the enforcement of a contract without violating "impairment of contract" prohibitions. (2) The 70% statute does not increase an employer's or carrier's substantive liability for injuries incurred or appeals taken by employers before the act's effective date.

It must be remembered from the outset that 1975 PA 34, and Worker's Disability Compensation Act as a whole, is essentially *remedial* legislation. *Van Dorpel v Haven-Busch Co,* 350 Mich 135, 154; 85 NW2d 97 (1957). Furthermore, this Court has held that remedies for the enforcement of a contract may be modified without violating the impairment of contract clauses. In *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959), this Court specifically held that medical benefits due under the existing worker's compensation act could be

---

[17] US Const, art I, § 10; Const 1963, art 1, § 10.

extended without impairing existing contractual relationships.

Our Court, relying on a New York decision, reasoned thus:

"In *Matter of Schmidt v Wolf Contracting Co,* 269 App Div 201; 55 NYS2d 162 [1945], the court considered the aims and purposes of the workmen's compensation law in attempting to arrive at the intent of the legislature to apply a retroactive amendment to workmen injured prior to the effective date of the act, held the legislature had the right to so amend, and applied retrospectively the amended provisions. It further stated it was unreasonable to assume that the legislature intended that a workman who suffers injury on one date is any less affected than one injured on a subsequent date of the same year. With reference to the defense that the contract between the employer and its insurance carrier is impaired by such an amendment and that the statute violates the due process clauses of the State constitution and the Constitution of the United States, the court said (pp 207, 208):

" 'That argument is without merit. * * *

" 'Liability under the workmen's compensation law is contractual, the amendment is not thereby violative of the provisions of the Constitution of the United States. The police power of the State may be exercised to affect the due process of law clause as well as the impairment of contract clause of the Federal Constitution.

" 'The subject matter of workmen's compensation reposes within the control of the legislature.

" 'A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority.' " *Lahti, supra,* 592.

The Court in *Lahti* reached the identical conclusion we posit in the case at bar:

"Believing as we do that no vested right or contractual right exists that prohibits the legislature from making a change in the remedies afforded employees

under the workmen's compensation law, and keeping in mind the express primary purpose of the act to transfer to industry the expense of injuries to employees growing out of and in the course of their employment, it is apparent to us that the legislature intended * * * [citation omitted] to substitute for the existing remedies under the act some expansion thereof."

As for appellants' second contention, the 70% statute clearly does not retroactively alter existing substantive law by changing the amount of the employer's liability. The 70% statute only effectuates a *procedural* change; employers and carriers are now required to make immediate payment pending the appeal. However, the substantive benefits (the "100%" total) ultimately owed, or not owed, remain exactly the same.

Finally, amendatory statutes relating to procedure, such as the one we are concerned with in the instant case, are intended to be applied retroactively in any event, absent legislative expression to the contrary. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). On June 16, 1975, the Legislature went so far as to specifically declare that 1975 PA 34 was to be applied to cases arising before the act's effective date:

"It was also the clear and distinct intent of the Michigan Legislature, when enacting Act No 34 of the Public Acts of 1975, that section 862 was to be construed retroactive concerning all cases, pending an appeal, as well as new cases on appeal after the date of May 6, 1975 * * * ." Senate Concurrent Resolution No 164, 1975 Senate Journal, No 70, pp 1230–1231.[18]

---

[18] The concurrent resolution, *supra, does not* completely solve the retroactivity problem which inheres in 1975 PA 34. However, the WCAB's opinion in *Karbel* confronts the ambiguity of the 70% amendment and we adopt its analysis:

"Having, therefore, held that the amendment applies to the instant

Therefore, we hold that 1975 PA 34 neither impairs existing contracts nor retroactively changes existing substantive law. The act only retroactively changes existing procedural remedies; those changes were consciously provided for by legislative fiat.

## V. DISMISSAL: NONCOMPLIANCE

In their final issue, appellants contend that the Worker's Compensation Appeal Board (WCAB) exceeds its authority in dismissing appeals by employers or carriers for noncompliance with 1975 PA 34.[19]

---

matter it remains to determine the precise application. This aspect of the matter presents a rather more troublesome issue since literal application of the Act would require that defendant not only commence payment of seventy (70) percent of the weekly benefit but also pay seventy (70) percent of the amounts accrued since the hearing referee's decision. It seems clear, however, from the plain language of the amendment that the legislature intended only to provide those who had obtained a favorable decision at the hearing referee level with some *immediate ongoing source of sustenance and not with accruals* on the award. Thus, the Act expressly provides that benefits 'accruing prior to the referee's award shall be withheld until final determination of the appeal.' *It would, accordingly, seem incongruous with, if not patently contrary to, this obvious legislative intent to issue orders requiring payment of amounts accrued prior to the effective date of the amendment.* Accordingly, defendant should be ordered to commence payment of seventy (70) percent of the weekly benefit provided for in the hearing referee's decision from May 6, 1975 (date signed by the Governor), and until further order of the Bureau." 1975 WCABO 1859. (Emphasis added.)

This Court agrees with *Karbel.* No benefits under the 70% statute shall commence before the date of the act, May 6, 1975. Thus, "back" 70% benefits, those benefits accrued before the effective date of the 70% statute, are not owed to claimants who received a hearing referee's award before May 6, 1975. However, those claimants who received awards prior to the effective date of the act are entitled to 70% benefits from May 6, 1975,—even if the injury, the award and the employer's appeal all occurred before the effective date of 1975 PA 34.

Accordingly, if a hearing referee's award was in effect as of May 6, 1975, 70% benefits are due the claimant from May 6, 1975. However, no accrued benefits are owed. We cannot overemphasize that the goal of the legislation is *sustenance.*

[19] We will only briefly address the instant issue since leave to

We agree with the Court of Appeals that power
of the WCAB to dismiss appeals for noncompliance
with 1975 PA 34 is necessarily implied from the
statute itself:

"The power of the Appeal Board to dismiss an em-
ployer's appeal for failure to comply with PA 34 is
necessarily implied from the act. Were it not, the act
would become meaningless; the very problem PA 34
was designed to alleviate would persist—the award of
the disabled worker remaining unpaid while judicial
enforcement of the act is sought. We cannot read the
Legislature's intent as being directly contrary to its
clear expression of policy." 70 Mich App 544.

The WCAB also correctly reasoned that the 70%
statute operates as a condition precedent for the
perfection of an appeal and that failure to comply
with the statute's mandate necessitates a dis-
missal:

"It is clear that this legislation is a prerequisite for
the perfecting of an appeal and that failure to comply
with the statutory mandate or this order will result in
a dismissal. Should defendant, therefore, refuse to com-
ply then a subsequent order dismissing its claim for
review will issue forthwith in the same manner that
such orders are issued for failure to properly perfect an
appeal as where there is a failure to file a transcript."
*Karbel v Greyhound Food Management,* 1975 WCABO
1851, 1859.

Also see *Java, supra.*

The appellants in these consolidated cases were
all given written notice that dismissal orders
would enter if they did not comply with 1975 PA

appeal was *not* granted on this issue. Leave was only granted to
consider "whether the Court of Appeals judgment, upholding the
constitutionality of 1975 PA 34, is correct". 397 Mich 859–860; 245
NW2d 334 (1976).

34. Furthermore, the WCAB's decision in *Karbel,* a precedential determination, accompanied that notice. None of the parties claims that proper notice was denied.

Therefore we are unwilling to conclude that WCAB exceeds its authority when, in a contested case, it dismisses appeals for noncompliance with 1975 PA 34.[20]

## VI. Conclusion

We affirm the Court of Appeals. The "70%" statute, 1975 PA 34, MCLA 418.862; MSA 17.237(862), is constitutional. However, we reverse the Court of Appeals finding that reimbursement is not mandated from the Second Injury Fund, MCLA 418.501 *et seq.;* MSA 17.237(501) *et seq.* The clear wording of the statute mandates exclusive reimbursement from the Second Injury Fund for 70% benefits paid pending appeal in excess of the amount finally determined. Finally, we hold that the Worker's Compensation Appeal Board's authority to dismiss appeals for noncompliance is necessarily implied from the act or the act becomes meaningless.

Affirmed as modified. No costs, a public question.

Kavanagh, C. J., and Williams, Levin, Fitzgerald, and Ryan, JJ., concurred with Blair Moody, Jr., J.

Coleman, J., *(dissenting).* We granted leave to

---

[20] The WCAB's opinion in *Karbel, supra,* does not conflict with Administrative Procedures Act of 1969 (APA), MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.*

"A determination, decision or order in a contested case" does not fall within the definition of an agency rule as found in MCLA 24.207; MSA 3.560(107) of the APA.

*See generally,* 1 Davis, Administrative Law Treatise, §§ 5.01–5.11, pp 285–359.

appeal primarily to consider the constitutionality of 1975 PA 34[1]—the "70% statute". This legislation requires a carrier (self-insurer, insurer or accident fund)[2] to pay a worker compensation benefits before the basic fact-finding and legal review procedures have been completed. Also, the legislation fails to provide a full refund for carriers who have been wrongly forced to pay benefits, so it is confiscatory in fact. The legislation violates Const 1963, art 1, § 17 which insures that "[n]o person shall * * * be deprived of * * * property, without due process of law".

If the employer were found not liable, plaintiffs under this worker's compensation scheme would receive a "gift" which would not have to be returned. No other plaintiffs would enjoy such a windfall.

Because the majority has found the legislation constitutional, I also note my disagreement with its finding of retroactivity. The statute is substantive in nature primarily because it provides for new obligations and new benefits.

It is agreed that the Worker's Disability Com-

---

[1] A "claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the referee's award shall be withheld until final determination of the appeal. If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in chapter 5. If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid. Interest shall not be paid on amounts paid pending final determination. Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau."

[2] MCLA 418.601(c); MSA 17.237(601)(c).

pensation Act serves a laudable purpose. It is also
agreed that the goal of speedy lawful payments to
a deserving plaintiff is exemplary. However, the
incursion upon basic constitutional rights of one
party in order to achieve speedy payment to an-
other who may not be entitled at all to such
payment is not a proper means to attain the goal.
The statute provides for self-reimbursement by the
"successful" defendant. There is no method of
recoupment of erroneously paid funds from the
employee.

Although the Legislature might have fashioned
a constitutional scheme, it did not.

### I. TIME OF 70% PAYMENTS

The factual situations as presented by Justice
MOODY are accepted. The legal conclusions are
disputed.

Const 1963, art 6, § 28 provides:

"Findings of fact in workmen's compensation proceed-
ings shall be conclusive in the absence of fraud unless
otherwise provided by law."

MCLA 418.861; MSA 17.237(861) parallels the
Constitution:

"The findings of fact made by the board [WCAB]
acting within its powers, in the absence of fraud, shall
be conclusive."

However, the point at which the employer must
begin 70% payment under 1975 PA 34 is prior to
WCAB action despite any dispute and the possibil-
ity of further evidentiary hearings. It is also prior
to judicial review of questions of law as provided
by Constitution and statute.

The Worker's Disability Compensation Act requires that "[a]ny controversy concerning compensation * * * be submitted to the bureau" of workmen's compensation. The bureau must determine "all questions arising under this act". MCLA 418.841; MSA 17.237(841).

When notice of a dispute is filed, the director "shall set the case for hearing and shall designate a hearing referee to hear the case". MCLA 418.847; MSA 17.237(847). A party dissatisfied with the referee's order may file a claim of appeal.

Appeals are submitted to the Workmen's Compensation Appeal Board, "an independent body with power and authority to hear and decide all appeals from the orders of the hearing referees and director". MCLA 418.255; MSA 17.237(255). The WCAB must "promptly review the order, together with the records of the hearing; it may hear the parties *together with such additional evidence as it in its discretion may allow them to submit"*. (Emphasis added.) MCLA 418.859; MSA 17.237(859).

The fact-finding process in disputed cases is complete in the WCAB.

MCLA 418.861; MSA 17.237(861) then provides that "the court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board". The Constitution requires that the review "include, as a minimum, the determination whether" the board's actions "are authorized by law".

Thus the adjudicative format is hearing referee, WCAB, Court of Appeals, Supreme Court—a sometimes lengthy process.

The Legislature then passed 1975 PA 34. MCLA 418.862; MSA 17.237(862). If a referee awards benefits, payment must begin "as of the date of the

hearing referee's award and * * * continue until
final determination of the appeal or for a shorter
time if specified in the award". The filing of a
claim for review "shall not operate as a stay of
payment to the claimant of 70% of the weekly
benefit". If the award "is reduced or rescinded by a
final determination, the carrier shall be entitled to
reimbursement * * * upon audit and proper
voucher from the *second injury fund"*. (Emphasis
added.)

1975 PA 34 provides that benefit payments be-
gin with the hearing referee's order. However, the
statute gives the employer a right to have that
claim reviewed by the WCAB and gives the WCAB
the right to consider additional evidence. This is a
critical stage of the process. It is where law and
fact are sifted out. It is where the scope of judicial
review is circumscribed.

1975 PA 34 has a praiseworthy goal—to insure
that deserving claimants promptly receive benefits.
However, in working toward that goal the legisla-
tion collides with the process for determining who
are deserving claimants. Also, in trying to protect
the rights of deserving claimants, the legislation
leaves unprotected the carriers' right to full reim-
bursement if the claimant is found to be undeserv-
ing and leaves that claimant in full possession of
moneys not owed but paid to him or her.

## II. THE COMMON LAW

Caselaw has consistently mirrored our recogni-
tion of the great importance of WCAB proceedings
and findings. However, 1975 PA 34 requires that
benefit payments begin even before the WCAB
makes its "conclusive" fact findings and before the
courts have an opportunity "to review questions of
law". Both the employee and the company or
carrier have a right to a WCAB review; both have

a right to seek the appellate court review authorized by the Constitution.[3]

In *Szydlowski v General Motors Corp,* 397 Mich 356; 245 NW2d 26 (1976), the plaintiff, a widow, filed a circuit court action based on employment-related injuries to her husband. The Court of Appeals said "the circuit court does have subject matter jurisdiction, concurrent with the workmen's compensation bureau". We reversed, affirming the position of *Herman v Theis,* 10 Mich App 684; 160 NW2d 365 (1968), that such issues "are to be exclusively within the purview of the workmen's compensation department, and the merits of such a claim are to be first evaluated by the department". We said *Theis* reminds us that workmen's compensation procedures "have been statutorily established" and "properly cautions us against a shortcut or circumvention of those procedures".

We have acknowledged the WCAB's primary position in these matters and have accepted the limitations on our scope of review. In *Evans v United States Rubber Co,* 379 Mich 457, 461; 152 NW2d 641 (1967), we said art 6, § 28 only meant that appellate court review of WCAB decisions "shall be had when, in the exercise of judicial judgment and discretion" the court accepts the appeal. On appeal, "[o]ur obligation * * * is to accept" the board's fact-finding, if supported, even if there is proof pointing the opposite way "and, having done so, * * * determine whether the

---

[3] Const 1963, art 6, § 28:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record".

award * * * is unfounded as a matter of law". *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968). "[W]henever possible" we want to "have the benefit of" the WCAB's views "before opting for one or another interpretation of this complex and frequently amended statute". *Kushay v Sexton Dairy Co,* 394 Mich 69, 77; 228 NW2d 205 (1975).

The importance of WCAB proceedings was emphasized in *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96, 100; 214 NW2d 794 (1974). The WCAB opinion had tangled its factual findings and legal conclusions. We were "unable to perform that necessary first step of review" which

"is to separate its findings of fact from its understanding of the law controlling the case. If the Appeal Board correctly understood the law and determined as a matter of fact that appellant did not suffer permanent and total disability, we are bound by law to accept its decision in this case. * * * If, however, the Appeal Board erroneously interpreted the Workmen's Compensation Act in reaching its decision, we have the duty and authority to correct any such erroneous legal conclusions."

We reminded the WCAB that the proper performance of our review depends on the board's proper performance of its review. Also see *Harrison v Tireman & Colfax Bump & Repair Shop,* 395 Mich 48; 232 NW2d 274 (1975), and *Steel v Suits News Co,* 398 Mich 171, 177–178; 247 NW2d 284 (1976). ("[T]o properly review this conclusion, we must have the facts and a clear conclusion that the employment did or did not cause or contribute to the injury. We cannot discharge our review function if the facts are imprecisely or unclearly stated".)

An unemployment compensation statute was

considered in *Chrysler Corp v Smith,* 297 Mich
438, 452–453; 298 NW 87 (1941). Although not the
focus of the opinion, the Court did note a section
providing that

"if the final decision of a referee affirms the initial or
an amended determination, or the appeal board affirms
the final decision of a referee, allowing benefits, such
benefits shall be paid regardless of any appeal which
may thereafter be taken, but if such decision is finally
reversed, no employer's experience record shall be
charged with benefits so paid".

The Court was concerned that this "would render
administrative action superior to recognized judi-
cial power" and make the court review provisions
"a nullity". It said the section, if applied, "would
render due process of law, expressly recognized
and provided for in the act, nugatory and a sense-
less gesture".

The same section was reviewed in *Chrysler Corp
v Unemployment Compensation Commission,* 301
Mich 351, 356, 360; 3 NW2d 302 (1942). The Court
held it unconstitutional for "the fundamental rea-
son" that

"otherwise the controverted issue of claimants' right
to be paid compensation would in effect be finally
decided and the compensation paid without affording an
adverse party any opportunity whatever to have ob-
tained a *judicial* determination of the rights of the
respective parties; and thereby the party contesting the
employees' claim to compensation would be deprived of
the right to due process which is afforded by both the
State Constitution and the Federal Constitution when-
ever the controversy involves property rights."

The provision would "deprive the courts of any
effective review or supervisory control of awards of

compensation to applicants therefor regardless of whether or not they were entitled to same under the terms of the act" the Court said.

In fn 10 of his opinion, Justice MOODY says that "[i]nsofar as *Chrysler Corp v Unemployment Compensation Commission* * * * is inapposite" to *California Dep't of Human Resources Development v Java,* 402 US 121; 91 S Ct 1347; 28 L Ed 2d 666 (1971), "our reliance on *Java* renders that decision nugatory". In the opinion, he does acknowledge that *Java* "arose out of a different factual context and dealt with the complex interplay of Federal-state guidelines regarding the prompt payment of unemployment benefits". He does not acknowledge that *Java* involves *statutory interpretation* rather than *constitutional law.*

The *Java* court held the California procedure was inconsistent with the Social Security Act which requires benefits to be paid when due.

In reviewing the California procedures, the Court said "it can be seen that the interview for the determination of eligibility is the critical point". This initial determination "is effective in insuring that benefits are limited to legally eligible claimants". The Court found that "95%–98% of ineligible claimants are screened out at this stage".

The Michigan workmen's compensation situation is not analagous to California's unemployment compensation situation. Here, the WCAB proceeding is the critical stage as to facts, as demonstrated above. Also, the courts are constitutionally assigned the function of reviewing for legal errors. The statistics are much different. From July 1, 1974 to July 1, 1975 the WCAB handled 518 cases by opinion and order: 302 were affirmed; 136 modified; 69 reversed; 11 remanded.

Thus, in 216 or nearly 42% of those 518 cases, the WCAB did not accept the referee's decision.

I believe the procedures established by Constitution and statute are the minimum necessary to insure that claims are handled fairly. The WCAB has an important review function; the appellate courts have a different but equally important review function. The imposition of liability and irreparable damage upon companies and carriers before these reviews are completed deprives them of procedure essential to due process of law.

Justice Moody notes that eligible workers "must often wait years to begin receiving compensation while the appellate process slowly grinds to a final conclusion". The "appellate process hamstrings the delivery of immediate benefits". Eligible employees are "whipsawed into settlements for lesser benefits in order to avoid the lengthy appellate process". We have a "strangulating appellate process".

If all this is true, it is also true for other plaintiffs, but this opinion rests primarily on due process rather than equal protection. However, the solution is obvious and does not involve curtailing basic procedural rights of one or more parties to the dispute. We should not punish any party for judicial failure to speedily process these cases or legislative failure to provide a constitutional solution. We cannot in good conscience deprive one party of due process of law in order to favor another. In the event of conflicting constitutional rights, a balancing may be necessary. Such is not the case here where we balance constitutional rights of one party against convenience to another. Our sympathies here undeniably lend weight to convenience. The question is how far we should go in sacrificing the basic rights of one party to sympathy for the opposing party.

Plainly stated the question is: Is this the key to unlock the door through which we allow the due process doctrine to escape?

## III. CONFISCATION OF PROPERTY

The Worker's Disability Compensation Act to date has enjoyed judicial findings of constitutionality primarily because it has maintained a balance —or trade-off—between opposing legal rights. For example, the worker gives up the right to sue the employer in tort and the employer gives up defenses available in tort, such as negligence of the worker.

However, 1975 PA 34 boasts no such virtue. It is plainly confiscatory in nature. There is no balancing of rights, no trade-off, no way that carriers can be made whole. It is no solution to rationalize that the losses will be passed on eventually to the consumer. Nor are all employers big and rich corporations. The corner grocery store, the small hardware store, the elderly person with a household helper also are included.

The act purports to provide for reimbursing those carriers forced to pay benefits to claimants who, on review, are found to be ineligible. However, as the trial court in the *Self-Insurers* case noted, 1975 PA 34 requires carriers "to bear the burden of appeal as well as the support of the individual claimant while the decision is being appealed". If successful, "the insurer is reimbursed out of a fund which it helps finance". All other insurers also are being "reimbursed" from that fund, so defendants not only are receiving back money they put in in the first place but are paying other insurers in like situations.

The non-reimbursed cost is passed on to the

employer and, if the employer is in business or industry, thence to the consumer. If a governmental unit is the employer, it is passed on to the taxpayer. If the employee is a household helper, the homeowner absorbs the cost. If the employer is self-insured, the "self" in the "self-insured" absorbs the cost.

## A. REIMBURSEMENT FROM EMPLOYEE-CLAIMANTS

The Court of Appeals conceded that 1975 PA 34 might be unconstitutional if construed as "limiting reimbursement only from the Second Injury Fund" and noted that reimbursement also could be sought from the employee-claimant. I agree with Justice MOODY that the 70% act provides only one means of reimbursement, thereby excluding reimbursement from the employee who was wrongfully paid and also excluding any other means of reimbursement.

However, my colleagues go further and say that the carrier should be required to pay the 70% of what is *not* owed and that *no* reimbursement is necessary.

At least the Court of Appeals recognized a long line of Michigan cases holding that we cannot deprive a party of recoupment of money not owed but paid to a worker or beneficiary. This constitutional concept is basic and the 70% statute fails partially because it violates this tenet.

Certainly I cannot agree with Justice MOODY that "the legislation involved deals with property rights" and therefore "not fundamental rights". The fallacy is obvious.

In *Kirchner v Michigan Sugar Co,* 206 Mich 459, 463, 465; 173 NW 193 (1919), the state accident fund by mistake overcompensated a worker. The

fund sought reimbursement. The industrial accident board ordered "that the total sum overpaid * * * shall be applied on the future compensation payable * * * until such overpaid amount is entirely consumed". The Court affirmed saying the worker was "entitled to receive, and his employer is obligated to pay, no more and no less than the statute compensation". The board had authority "to make such an order * * * to bring about, so far as possible, such desired and lawful result".

In *Webster v Rotary Electric Steel Co,* 321 Mich 526, 532; 33 NW2d 69 (1948), the plaintiff's husband was killed while working. She and an infant daughter received benefits. When plaintiff remarried, a dispute arose concerning the child's benefits. On appeal the Court reduced the benefits. It also ordered that if overpayments were made, the amount "shall be deducted from future payments". Also see *Samels v Goodyear Tire & Rubber Co,* 323 Mich 251, 259; 35 NW2d 265 (1948):

> "One of the purposes of the compensation act is to afford the injured employee prompt relief and not permit it to be withheld while the employer delays payment by the filing of a petition or petitions to reduce compensation. * * * Nevertheless, where there has been no laches by the employer, the commission, when called upon by proper petition, should determine whether there has been an overpayment under the facts, as are presented in this case, and order the return of such overpayment either directly or by a credit on future payments. *The act seeks just compensation, but not a penalty".* (Emphasis added.)

These cases were reviewed in *Danford v Contract Purchase Corp,* 333 Mich 559, 567; 53 NW2d 377 (1952), where plaintiff, a widow, received a lump-sum advance payment to cover 129 weeks of benefits. Before that time expired, she remarried.

The company sought reimbursement which the commission granted and this Court affirmed:

"Her right to further compensation under the statute was terminated by her. Under the facts presented here we are in accord with the holding of the compensation commission that under the statute, reasonably interpreted, *the amount paid to her in anticipation of future payments that it was assumed she would be entitled to receive must be regarded as an overpayment.* In ordering the return the commission did not exceed its authority." (Emphasis added.)[4]

MCLA 418.827; MSA 17.237(827) permits an employee receiving compensation to begin "an action to enforce the liability of a third party". However, any recovery "after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable * * * to the date of recovery and the balance * * * shall be treated as an advance payment by the employer on account of any future payments of compensation benefits".

The plaintiff in *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), claimed that the statute above violated due process and equal protection guarantees by crediting money received for pain and suffering. We noted that at one time the employee had to elect a remedy—workmen's compensation or tort. Now, the employee can pursue both. We did "not find the provision for reimbursement to be an arbitrary denial of a property right". The reimbursement "is justified by the abrogation of the election of remedies requirement".

These cases underscore a conclusion that a com-

---

[4] *Also see Carter v Kelsey-Hayes Co,* 52 Mich App 470; 217 NW2d 405 (1974).

pany or carrier has a right to be fully reimbursed
for being required to pay benefits to undeserving
claimants. Full reimbursement means a dollar
back for a dollar paid.

## B. Second Injury Fund

1975 PA 34 does not provide full reimbursement.
The company or carrier is paid from the Second
Injury Fund. That fund was created "to compen-
sate workmen for successive injuries which leave
them totally and permanently disabled".[5] In *White
v Weinberger Builders, Inc,* 397 Mich 23; 242
NW2d 427 (1976), we adopted the Court of Appeals
analysis that the fund is "to protect the totally
and permanently disabled employee who is enti-
tled to compensation * * * from inflation by pass-
ing on legislative improvements in benefits with-
out assessing a single employer for benefits not in
effect at the time of injury". 49 Mich App 430, 436;
212 NW2d 307 (1973). The fund was intended to
promote hiring of handicapped persons.

The fund's money is provided by assessing each
carrier. Every year the workmen's compensation
director determines the total disbursements from
the fund during the preceding year. This figure is
multiplied by 175% and the result is reduced by
"the amount of net assets in excess of $200,000.00"
in the fund. This is the total assessment.

The director must then determine each carrier's
share of the total. He first finds the ratio of total
compensation benefits paid by each carrier (with
certain deductions) to the total compensation bene-
fits paid by all carriers. This ratio is applied to the

[5] *Buchau v Simmons Boiler & Machine Co,* 392 Mich 141, 151, 157;
220 NW2d 408 (1974) (Coleman, J., concurring).

total assessment and the resulting figure becomes the individual carrier's assessment.

The Second Injury Fund was not created to reimburse carriers. It was designed to spread the cost of certain workers' benefits among all carriers. It was designed to channel funds to deserving claimants without overburdening individual carriers. It was not designed to be a self-reimbursement fund.

As described above, the fund is financed by an assessment on each carrier. Under 1975 PA 34, each carrier forced to pay benefits to an undeserving claimant is reimbursed with its own money, with money it was required to pay. Further, by using Second Injury Fund money to reimburse, 1975 PA 34 lowers the balance of net assets in the fund, thus increasing the total assessment. This means each carrier's assessment will increase. The initial injustice is compounded in perpetuity.

In situations where reimbursement is warranted, 1975 PA 34 has operated to require a carrier to make payments to an undeserving claimant. The carrier is out of pocket a certain sum. It is reimbursed from a fund into which it is required to pay. The "reimbursement", in turn, will have the effect of requiring the carrier to pay more into the fund.

The carrier will never be made whole for payments which it was wrongly forced to make. All carriers must dip into their own money to "reimburse" themselves and then pitch in to replace the money paid to them.

On the other hand, the unsuccessful claimant will have received as a gift 70% of what would have been paid if he or she had been successful.

The result is to chill the right of appeal by an employer or carrier under this "no-win" concept.

Far from being frivolous, most defendants-appellants' appeals to this Court bring forth questions of substance. Some are of major jurisprudential importance, as, for instance, the effects of childhood or congenital psychiatric and physical disorders upon compensation under varied circumstances. (What is compensable and what is not?) Statutory interpretations of an imprecise and complex act frequently are in question.

In short, we cannot gloss over defendant appeals as "frivolous" in order to sustain a 70% payment of a possibly erroneous referee's finding.

The core of the problem is that taking money to place in the Second Injury Fund from one pocket and taking it out again as reimbursement to place in the other pocket—only to have to remove some of it to replace that taken from the fund in the first place—does not really add up to recoupment.

It is a fiction which is not avoided by saying that the money changes character by placement in the fund and thus becomes the "state's" money—which must be replaced by the same carriers who reimburse themselves from it. It is not part of the general fund. It is a special fund for a special purpose and funded by those same carriers which are now required to take the money out with one hand and replace it with another. It does not involve tax dollars.

We cannot (or should not) avoid reality in this analysis or we open wide the door to like confiscatory fictions in other concepts. We should not emulate the ostrich and bury our heads so that we do not see what we do not wish to see.

## C. Retroactivity

My colleagues also hang much on the nail of

"remedial legislation". Of particular note is the
reply in part IV to appellants' arguments against
retroactivity. They find no impairment of contrac-
tual obligations because the amendment, like the
parent workmen's compensation act, is termed
"remedial" not "substantive".

It is argued that the Legislature simply altered
the *"method* of enforcing pre-existing rights," and
that the 1975 statute did "not increase an employ-
er's or carrier's substantive liability for injuries
incurred or appeals taken by employers before the
act's effective date".

One fallacy immediately apparent is that even
in the *absence* of pre-existing rights, plaintiff re-
ceives the greater part of the benefits and keeps it
while the non-liable appellant can never fully
recover the money paid.

This is not a *method* of paying *what is due.* This
is substance, not form. It contains new "rights"
and "duties" as opposed to rules and remedies by
which substantive law is administered. It places
*new* burdens on employers and carriers and those
to whom those burdens are passed. It bestows *new*
rights upon the losing plaintiff.

Our jurisprudence as a whole will suffer from
the precedent that because an act is initially con-
sidered remedial, all amendments must also be
considered remedial whether or not new substan-
tive obligations (and concomitant benefits) are im-
posed.

Unless the meaning of "substantive law" is cor-
rupted, the Michigan scheme of 1975 PA 34, even
if made constitutional by judicial fiat, should not
be retroactive in application.

### IV. Summary

1975 PA 34 is confiscatory, providing for the

taking of property without due process of law. It bestows upon unsuccessful plaintiffs a non-returnable gift of 70% of what they would have received had they been successful. The successful defendant could never be fully reimbursed.

The point of entry into the process for purposes of payment is prior to final finding of disputed facts (in WCAB) and prior to any review of disputed law. The function of WCAB as the final fact-finder is overcome by this statute in practical effect.

Although defendants (whether industrial giants, small businesses or individual employers of household help and whether self-insured or insured by another "carrier") may be found *not* liable for a disputed injury, nevertheless 70% of the initial referee's award must be paid to the plaintiff and plaintiff need not ever return the money. It is in the nature of a windfall to a plaintiff without a valid claim.

Most importantly, the carrier cannot be fully reimbursed for such losses from the Second Injury Fund. Carriers place the money in the fund to encourage the hiring of handicapped people and to distribute the costs among the carriers. They are now to reimburse themselves from the same fund for the 70% losses. This lowers the fund, which in turn requires them to pay again into the fund to bring it up to level. They are bound to lose and on increasing levels. They cannot be made whole under this particular scheme. Their property is in fact confiscated.

1975 PA 34 proposes to raid the Second Injury Fund for a purpose other than encouraging the hiring of the handicapped. The effect of this raid is unpredictable. It could result in such a serious depletion that people for whom the fund was

intended could not benefit from it. Even the deepest pocket has a bottom. In this no-win situation, the right of a defendant to appeal is "chilled". For many, it may be "frozen".

Further, the statute is substantive in that it bestows new "windfall" benefits upon losing plaintiffs and creates new financial obligations upon winning employers and carriers which they cannot in reality recover. This is not simply a different method of payment to deserving plaintiffs so as to justify the term "remedial legislation". Therefore, my colleagues' decision that the statute is constitutional should not bear with it any obligations incurred by its terms prior to its effective date.

Because I would find 1975 PA 34 unconstitutional, retroactivity would not need to be considered nor would the Court of Appeals decision that recoupment could be obtained from the plaintiff-employee *(supra).* I would find the statute void and sever it from the Worker's Disability Compensation Act. The Legislature could then proceed to create a scheme preserving constitutional rights to all.

In my opinion, the laudable purpose of the statute cannot properly overcome the serious constitutional defects. The basic rights of *all* parties must be protected or the fundamental rights of none are safe. So far as the basic rights of one party are diminished, so are our own—and so are the rights of the employee-claimants designated as the recipients of this Court's well-intentioned beneficence.

I would reverse the Court of Appeals.