FLYNN v GENERAL MOTORS CORPORATION

Docket No. 87548. Submitted January 13, 1987, at Lansing. Decided May 20, 1987.

Carroll Flynn, an employee of General Motors Corporation, injured his ankle during the course of his employment. A hearing referee in 1976 ordered GM to pay workers' compensation benefits for three periods in 1974 and 1975 and to pay for partial disability in accordance with the act for wage loss due to injury or the unavailability of favored work. Flynn returned to work in September, 1975, and remained employed until he went on sick leave in December, 1980. In May, 1982, Flynn filed seventy-eight petitions for late payment penalties with the Workers' Compensation Bureau. He filed petitions for late payment penalties for each week thereafter, based on GM's failure to pay any compensation for partial disability after December, 1980. The referee consolidated the claims and ordered GM to pay $40,500 in penalties. The Workers' Compensation Appeal Board reversed the hearing referee. Flynn appealed by leave granted.

The Court of Appeals held:

1. The appeal board was correct in stating that the 1976 award ordered payments until further order of the bureau.

2. Whether Flynn's subsequent injury or illness was sustained at home or elsewhere is factually and legally irrelevant.

3. The referee's order did not necessarily require payment without any further interpretation of either the facts or the law. Flynn, at the time of his nonindustrial disablement, had the burden of showing that he was entitled to benefits whether or not he had been performing favored work. Thus, a dispute existed and the penalty provision did not apply.

4. The seventy percent rule does not apply to the payment of

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 338 *et seq.*

Crediting employer or insurance carrier with earnings of employee reemployed, or continued in employment, after injury. 84 ALR2d 1108.

See also the annotations in the Index to Annotations under Workers' Compensation.

penalties, only to the payment of benefits. Thus, the appeal board did not err in rejecting Flynn's motion to dismiss GM's appeal for failure to comply with the seventy percent rule.

5. GM was not required to file a proof of payment in order to appeal the order to pay penalties.

6. The issue of the appropriateness of cumulative penalties is moot.

Affirmed.

WORKERS' COMPENSATION — SUBSEQUENT WAGE-EARNING CAPACITY — FAVORED WORK.

Performance of "favored work" after a work-related injury does not establish a wage-earning capacity for the purpose of computing future workers' compensation benefits.

*MacDonald, Fitzgerald & MacDonald, P.C.* (by *R. Duncan MacDonald*), for plaintiff.

*Evans & Nelson, P.C.* (by *John J. Hays* and *Willard W. Wallace*), for defendant.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and G. W. CROCKETT,* JJ.

PER CURIAM. Plaintiff, Carroll Flynn, appeals by leave granted from a decision issued by the Worker's Compensation Appeal Board reversing a decision of a hearing referee. The referee had ordered defendant, General Motors Corporation, to pay cumulative penalties totalling approximately $40,000. We affirm the WCAB.

In September, 1974, plaintiff, an electrician at defendant's Fisher Body Coldwater Road Plant, filed an application for worker's compensation benefits based on an ankle injury he sustained during the course of his employment in September, 1972. In January, 1976, defendant was ordered by a hearing referee to pay compensation for plaintiff's total disability during three specified periods of

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

time ending in August, 1975. The decision further provided that defendant pay additional compensation for partial disability under certain circumstances until further order of the bureau. Defendant did not appeal this decision.

In September, 1975, plaintiff returned to work and remained employed in his job as an electrician until December, 1980, when he went on sick leave. Upon plaintiff's return to work, defendant filed notices of stopping compensation with the bureau. Except for a very brief period in December, 1976, he received no additional compensation for his ankle injury. His sick leave was prompted by severe diabetes and arteriosclerosis in the lower extremities. In May, 1981, one of defendant's physicians determined that plaintiff was totally and permanently disabled, and plaintiff was granted a disability retirement. Neither party claims that plaintiff's diabetes or arteriosclerosis is in any way related to plaintiff's employment or the prior ankle injury.

In May, 1982, plaintiff filed seventy-eight petitions with the bureau for late payment penalties. Plaintiff filed late payment penalty petitions for each week thereafter, apparently based on defendant's failure to pay any compensation for partial disability following plaintiff's retirement in December, 1980. Shortly thereafter, defendant filed a motion with the referee to dismiss or consolidate the seventy-eight petitions and a motion "for further order of the Bureau." In January, 1983, the referee issued a decision granting defendant's motion to consolidate and dismissing the motion for further order of the bureau; moreover, the referee ordered defendant to pay $40,500 in penalties. The WCAB reversed the referee in August 29, 1985, and we granted plaintiff's request for leave to appeal.

Our review of a decision by the WCAB is limited.

Findings of fact made by the WCAB are conclusive and may not be set aside if supported by record evidence, absent a showing of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Howard v General Motors Corp*, 132 Mich App 639; 348 NW2d 286 (1984). However, the WCAB's decision may be reversed if it operated within the wrong legal framework or where its decision is based upon erroneous legal reasoning. *Devault v General Motors Corp*, 149 Mich App 765; 386 NW2d 671 (1986).

Plaintiff first argues that the WCAB erred in stating that the award fashioned in 1976 by a hearing referee did not order payments "until further order of the Bureau." Apparently, plaintiff believes the WCAB's statement constitutes factual error because the 1976 decision provides for partial disability "until further order of the Bureau." Plaintiff cites no case law as other authority in support of his position, relying exclusively on the plain language of the 1976 decision.

A review of the language used in that decision makes clear that the WCAB's statement is supported by the evidence. The decision did not unqualifiedly provide plaintiff with partial disability benefits until further order of the bureau; rather, it specifically required, in language typewritten on the preprinted decision form, that "defendant pay in accordance with the Act for wage loss due to injury or due to the unavailability of favored work." Plaintiff focuses solely upon the language in the 1976 decision which ordered defendant to pay benefits until further order of the bureau to the exclusion of the conditional language concerning wage loss due to injury and the unavailability of favored work. This view distorts the situation and is based on a piecemeal reading of the 1976

decision which depends on a phrase taken out of context.

Second, plaintiff argues that the WCAB committed error in stating that "[s]ubsequently, plaintiff injured himself at home." Plaintiff directs our attention to the fact that his supervening, totally disabling illnesses of diabetes and arteriosclerosis did not necessarily occur at his home. Whether plaintiff's illnesses occurred at home or elsewhere, however, is of no import in plaintiff's case. It is not disputed that plaintiff's subsequent illnesses are wholly unrelated to his employment or his work-related ankle injury. Read in context, the WCAB's reference to plaintiff having sustained his illnesses at home merely indicates that those illnesses are not work related. Whether in fact they were sustained at home thus is factually and legally irrelevant.

Plaintiff next argues that the WCAB erred in stating that the events in plaintiff's case, "considered in their chronological order constitute a dispute and defendant need not pay a penalty." The penalty provision of the Workers' Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* provides:

> If weekly compensation benefits or accrued weekly benefits are not paid within 30 days after becoming due and payable, *in cases where there is not an ongoing dispute,* $50.00 per day shall be added and paid to the worker for each day over 30 days in which the benefits are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection. [Emphasis added. MCL 418.801(2); MSA 17.237(801)(2).]

The existence of a "dispute" is a finding of fact which will not be overturned by this Court if it is supported by some competent evidence. *Nezdropa*

*v Wayne Co,* 152 Mich App 451, 474; 394 NW2d 440 (1986).

The wcab concluded that the existence of a dispute precluded the imposition of penalty payments in this case. Penalty payments are unavailable if there is an ongoing dispute. *Perry v Sturdevant Manufacturing Co,* 124 Mich App 11; 333 NW2d 366 (1983); *Woods v Sears, Roebuck & Co,* 135 Mich App 500, 507; 353 NW2d 894 (1984), lv den 421 Mich 852 (1985). In *DeKind v Gale Manufacturing Co,* 125 Mich App 598, 608; 337 NW2d 252 (1983), lv den 418 Mich 852 (1983), this Court stated:

> If the employer chooses to demand a hearing, there is an ongoing dispute. In *Charpentier* [v *Canteen Corp,* 105 Mich App 700; 307 NW2d 704 (1981), lv den 412 Mich 887 (1981)], the Court held that an award is to be considered disputed while review or appeal is pending and during the time periods provided for filing a claim for review or for seeking an appeal.

In the present case, as noted above, the hearing referee did not unqualifiedly order partial disability benefits until further order of the bureau. Rather, such benefits were to be paid "in accordance with the Act for wage loss due to injury or due to the unavailability of favored work." Thus, the terms of the order did not necessarily require the payment of benefits without any further interpretation of either the facts or the law.

It seems that the first notice received by defendant regarding any claim for additional compensation was the receipt of plaintiff's seventy-eight petitions for penalties. Defendant thereafter sought review of the underlying claim and subsequently appealed the referee's award of penalties to the wcab. Since the employer chose to demand

a hearing, there was an ongoing dispute, thus precluding the imposition of penalties under the statutory penalty provision. MCL 418.801(2); MSA 17.237(801)(2). Under these circumstances, we do not conclude that the WCAB's finding of a dispute is unsupported by competent evidence.

Plaintiff further argues on this issue that the WCAB erred in assuming that *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979), constituted new law. Plaintiff reasons that *Powell* adds nothing new to the rule enunciated in *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950), that "supervening events, stopping [a claimant's] favored work and not attributable to him, will not defeat his compensation as a skilled employee." However, the significance of *Powell* was not its reliance on *Lynch. Powell's* significance lies in the Supreme Court's ruling that a subsequent wage-earning capacity cannot be established as a matter of law by the performance of favored work. *Powell, supra,* p 349. The WCAB's apparent recognition of the significance of *Powell* concerning the prohibition against establishing a wage-earning capacity based on favored work is not erroneous. Furthermore, *Powell* did not require compensation benefits to be *automatically* revived upon the happening of an intervening nonindustrial event which disables a favored-work employee, as plaintiff suggests. Rather, *Powell* found that such an event did not *preclude* the payment of compensation for a prior injury. 406 Mich 339. Thus, at the time of plaintiff's nonindustrial disablement, he still had the burden of establishing his entitlement to benefits, even if he was in fact performing "favored" work—a determination never specifically made below.

Next, plaintiff argues that the WCAB erred in failing to dismiss defendant's appeal due to defen-

dant's failure to comply with the statutory provision requiring payment of seventy percent of weekly benefits pending review. At the time of defendant's motion, the statute stated, in pertinent part:

> A claim for review filed pursuant to sections 859 or 861 shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the hearing referee's award. Payment shall commence as of the date of the hearing referee's award and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the referee's award shall be withheld until final determination of the appeal. [MCL 418.862; MSA 17.237(862).]

In support of his position, plaintiff cites one case, *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977), reh den 402 Mich 953 (1977). In *McAvoy,* the Supreme Court stated that the seventy percent rule, which requires payment of seventy percent of awarded workers' compensation benefits during an appeal taken by the employer or insurance carrier, operates as a condition precedent for the perfection of an appeal, and failure to comply with the rule necessitates dismissal.

In this case, plaintiff's motion to dismiss based on defendant's noncompliance with the seventy percent rule was not specifically addressed by the WCAB, but instead was implicitly rejected. In the absence of any specific determination by the board on a matter in controversy, this Court may look to the record to determine whether the award is supported by evidence. *Palchak v Murray Corp of America,* 318 Mich 482, 494-495; 28 NW2d 295 (1947).

Plaintiff has failed to demonstrate error requir-

ing reversal. Defendant was not appealing from the initial 1976 award; rather, it was appealing from a subsequent hearing referee's decision to impose penalties. The seventy percent rule refers to the payment of weekly *benefits* ordered by a hearing referee. Since penalties, not benefits, were awarded, the seventy percent rule was inapposite. In addition, the statute itself provides that benefits accruing *prior* to the referee's award shall be withheld until final determination of the appeal. In this case, defendant had been assessed penalties in an order dated January 31, 1983, for a closed period of time ending on July 10, 1982. Thus, the penalties, even if considered benefits, accrued prior to the referee's award and, pursuant to the seventy percent rule, would not have to have been paid until final determination of the appeal concerning the penalties.

Plaintiff also argues that defendant's motion for further order of the bureau, which plaintiff characterizes as a petition to stop compensation, should have been dismissed on the basis that defendant failed to file proof of payment of compensation to within fifteen days of the filing of its petition. Although not specifically cited, plaintiff apparently relies upon 1979 AC, R 408.40, which requires, among other things, a petition to stop compensation benefits to be accompanied by proof of payment of compensation to within fifteen days from the date of filing the petition. The hearing referee, in his January 31, 1983, decision, dismissed defendant's motion for further order of the bureau to terminate compensation benefits for failure to comply with 1979 AC, R 408.40, and the WCAB did not address the issue.

Plaintiff has not shown error requiring reversal on this issue because the petition to stop compensation benefits itself was superfluous. Neither the

hearing referee nor the WCAB in considering the penalty question ordered the payment of weekly compensation benefits. Moreover, as concluded above, defendant was not under an open or unqualified continuing obligation under the 1976 referee decision to pay weekly compensation benefits. Plaintiff does not dispute that defendant filed unchallenged notices of stopping compensation with the bureau upon plaintiff's return to work in 1975. Thus, at the time defendant filed for further order of the bureau, no compensation benefits were being paid to plaintiff, and there were, as a result, no compensation payments either to stop or to be paid within fifteen days.

Last, plaintiff argues that defendant's deliberate and blatant refusal to meet its obligations under the WDCA justifies an award of cumulative penalties. The referee, pursuant to the $1,500 statutory penalty provision, awarded penalties of $1,500 for all petitions filed by plaintiff covering the dates from July 12, 1980, through January 9, 1982, and of $1,500 for each of twenty-six petitions filed weekly by plaintiff between January 16, 1982, and July 10, 1982. MCL 418.801(2); MSA 17.237(801)(2). In *DeKind v Gale Mfg Co, supra,* p 606, this Court held that the $1,500 penalty provision of the WDCA applies to each period in which compensation benefits are not paid and for which an injured worker has filed a petition for a hearing on the nonpayment. Apparently, petitions were filed by plaintiff in this case for each penalty assessed by the referee.

The WCAB never addressed this issue because it concluded that a "dispute" existed and therefore penalties were unavailable to plaintiff under the statutory penalty provision. Since we have found that competent evidence supports the WCAB's conclusion that a dispute existed, we also conclude

that penalties are unavailable to plaintiff under the penalty provision. The issue whether plaintiff is entitled to cumulative penalties, therefore, is moot.

The decision of the WCAB is affirmed.