SONOC v UNIVERSITY CONVALESCENT & NURSING HOME,
INC

Docket No. 97467. Submitted March 10, 1988, at Detroit. Decided May
5, 1988. Leave to appeal applied for.

Cynthia E. Sonoc was employed as a nurse's aide by University
Convalescent & Nursing Home, Inc., when, on November 6,
1979, she suffered incapacitating pain in her right arm. She
remained off from work until January, 1980. In late January,
1980, she reinjured herself and was off from work until July,
1980, with the exception of two days in February. When she
returned to work on a part-time basis in July, 1980, she was
given a job which involved no bending or heavy lifting. In
November, 1980, she was assigned full-time light-duty work
which involved no lifting. She had no problem with this work.
In January, 1981, she was made a light-duty aide which in-
volved some lifting. While this job caused some pain in her
arm, she was able to perform it. On March 18, 1981, she left
her position with the nursing home. On the next day, she
commenced employment as a private nurse's aide. After 2½
months she was fired from that job because she was unable to
perform the work without aggravating the pain in her arm.
Sonoc sought workers' disability compensation benefits for peri-
ods after June 1, 1980. Following a hearing, the hearing officer
held that Sonoc continued to be disabled as a nurse's aide even
after returning to the favored work and ordered payment of
benefits until further notice. Her employer and its insurer,
Reliance Insurance Company, appealed to the appeal board.
The appeal board held that the right to benefits terminated on
March, 18, 1981, the date Sonoc voluntarily terminated her
employment with the nursing home in order to take another
job. Sonoc appealed.

The Court of Appeals *held:*

The record supports the finding that Sonoc voluntarily quit
her favored work in order to secure another job rather than
because she was unable to perform the favored work. Accord-

REFERENCES
Am Jur 2d, Workmen's Compensation §§ 153, 591 *et seq.*
See Index to Annotations under Worker's Compensation.

ingly, that voluntary termination acted to terminate her rights to disability compensation benefits.

Affirmed.

Workers' Compensation — Favored Work — Voluntary Termination of Employment.

Workers' disability compensation benefits are properly terminated where it is found that the injured employee was offered favored work that the employee was capable of performing and the employee thereafter voluntarily terminated employment in order to take a different job.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Granner S. Ries*), for plaintiff.

*Jacobs & Miller* (by *Robert F. James*), and *Charfoos, Reiter & Krut, P.C.* (by *Myron B. Charfoos*), for defendant.

Before: Doctoroff, P.J., and Cynar and P. D. Houk,* JJ.

Per Curiam. Plaintiff, Cynthia E. Sonoc, appeals by leave granted from the November 19, 1986, decision of the Workers' Compensation Appeal Board, which denied compensation benefits after March 18, 1981. We affirm.

Plaintiff began working at the University Nursing and Convalescent Home as a nurse's aide on January 24, 1979. As a nurse's aide, she was responsible for the care of elderly patients. On November 6, 1979, while plaintiff was lifting a patient from a wheelchair to the bed, she felt a pain shoot from her right elbow to her wrist. Plaintiff filled out an accident report and continued her shift. The following day, she went to the Midway Clinic and received a whirlpool treatment on her arm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff was off work until January, 1980. She returned to her nurse's aide position, experiencing only slight pain. At the end of January, plaintiff reinjured herself while putting a patient in bed. She felt pain through her arm, shoulder and back. She was off work again until late February, 1980. She returned to work for two days and, subsequently, was told by her chiropractor, Dr. Kotila, to stop working.

Plaintiff was off work until July, 1980. She returned as a part-time feeder because Dr. Kotila imposed certain restrictions, e.g., no excessive bending or heavy lifting. As a feeder, she passed out dinner trays and assisted patients with their meals.

In November, 1980, plaintiff was assigned to full-time "light-duty" work which consisted of taking vital signs, shaving male patients and assisting patients with their lunch and dinner trays. Plaintiff did not have difficulty performing these duties. The work was lighter than that of a nurse's aide and she was able to do it. However, in January, 1981, plaintiff's job was changed to a "light-duty aide." This job did not require as much lifting as a nurse's aide job and most of her patients were ambulatory. Although this work was lighter than the work of a nurse's aide, plaintiff, at times, would suffer pain in her arm, back and neck requiring her to rest. As a result, she could not keep up with her work load.

Plaintiff left her job on March 18, 1981, because she accepted a new position for a patient in a private home. She told the nursing home that she was leaving due to her pain, which prevented her from doing her job adequately. The day after she left the nursing home, she commenced her new job as a private nurse's aide. Plaintiff also testified that her new job was not lined up before she

stopped working at the nursing home. She got the new job on the same day she left the nursing home. Plaintiff worked as a private aide for 2½ months. As the household duties increased, plaintiff was unable to perform the work without aggravating the pain. She was subsequently fired from this position.

Plaintiff received compensation benefits until June 1, 1980. The notice of termination of benefits indicated that payments were being stopped because plaintiff had recovered from her disability. However, the hearing officer found that plaintiff continued to be disabled from performing the duties of a nurse's aide. The hearing officer ordered the payment of compensation until further order of the bureau.

The nursing home and its carrier, Reliance Insurance Company, appealed the hearing officer's decision to the WCAB. The board affirmed the hearing officer's decision with a modification. The board affirmed the hearing officer's finding that plaintiff suffered from a work-related disability on November 6, 1979, that when she returned to work in July, 1980, she was performing "favored work," and that at no time was she able to return to her regular duties as a nurse's aide. However, the WCAB denied compensation benefits after March 18, 1981, finding that plaintiff had "voluntarily" left the nursing home after accepting a new position, not because of any disability. The instant appeal followed.

The sole issue for our determination is whether the WCAB erred by denying plaintiff compensation benefits after March 18, 1981. We find no error and affirm the WCAB.

Our review of a decision by the WCAB is limited. Findings of fact made by the board are conclusive and may not be set aside if supported by record

evidence, absent a showing of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Flynn v General Motors Corp,* 162 Mich App 511, 514; 413 NW2d 444 (1987). However, the WCAB's decision may be reversed if the WCAB operated within the wrong legal framework or where its decision is based upon erroneous legal reasoning. *Id.*

The dispute on appeal centers on whether plaintiff voluntarily left favored work on March 18, 1981, because she had accepted a different job or because she could not perform the favored work offered by defendant nursing home.

In *Bower v Whitehall Leather Co,* 412 Mich 172, 182; 312 NW2d 640 (1981), our Supreme Court discussed the nature of the favored-work doctrine:

> The favored-work doctrine is a purely judicial creation. Favored, or light, work can be loosely defined as less strenuous post-injury work. Wages from favored work may be used as a setoff against an employer's compensation liability, MCL 418.361(1); MSA 17.237(361)(1), but favored-work wages do not establish an earning capacity, and when such wages cease, they neither suspend nor bar compensation. *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979).
>
> The primary purpose of the doctrine is that of mitigation. It allows an employer to reduce or completely eliminate compensation payments by providing work within the injured employee's physical capacity. At the same time, it encourages the employee to return to productive employment rather than to remain idle, thus also serving a rehabilitative function. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966).

The burden is on the employer to show that it offered the employee work that the employee could perform. *Kolenko v United States Rubber Prod-*

*ucts, Inc,* 285 Mich 159, 162; 280 NW 148 (1938). An employee who refuses favored work does not forfeit compensation benefits where the refusal is reasonable. *Bower, supra,* p 185. However, in *Steward v Westran Corp,* 130 Mich App 68, 71-72; 343 NW2d 7 (1983), this Court held that an unreasonable refusal of favored work does not permanently deprive an employee of compensation benefits. An unreasonable refusal merely suspends the employee's benefits for the duration of the unreasonable refusal.

Further, in *Coon v Rycenga Homes,* 146 Mich App 262, 265; 379 NW2d 480 (1985), lv den 424 Mich 899 (1986), this Court stated:

> The question of whether a disabled employee performing favored work who quits or is discharged is entitled to further compensation benefits is one of fact in each case. The inquiry requires a two-step analysis: (1) Was the employee able to perform the favored work? If not the employee is then entitled to receive compensation benefits. (2) If the employee was able to perform the favored work, the inquiry is whether the employee was fired for any reason connected with his disability or whether the employee was fired for just cause. *Porter v Ford Motor Co,* 109 Mich App 728; 311 NW2d 458 (1981).

In this case, the WCAB found that defendant employer had sustained its burden by offering plaintiff work that she could perform. In fact, on one occasion, the offered position was first cleared with Dr. Kotila. Dr. Kotila's deposition testimony revealed that plaintiff was capable of performing the work of a "light-duty aide" within the limitations imposed by Dr. Kotila. We recognize that plaintiff experienced pain in performing the work of a light-duty aide. However, she did not leave

this position due to her inability to continue working in this capacity. Instead, she left because she had been offered another position. Plaintiff began working for her new employer the day after she quit working for the nursing home. Plaintiff did not leave the nursing home because of any alleged disability. Thus, the decision of the WCAB is affirmed.

Affirmed.