KAPALA v ORVILLE FRANK ROOFING COMPANY

Docket No. 103005. Submitted May 12, 1988, at Detroit. Decided November 7, 1988.

On June 4, 1979, Lucille Kapala filed a claim against Orville Frank Roofing Company and the Michigan State Accident Fund alleging that workers' compensation benefits were due her as a result of the death of her husband, Raymond Kapala, on June 5, 1968, following an injury that occurred on that day while he was working for Orville Frank Roofing Company. A hearing referee awarded death benefits to plaintiff. The Workers' Compensation Appeal Board affirmed the referee. Defendants' application for leave to appeal to the Court of Appeals was denied. Defendants sought leave to appeal to the Supreme Court which, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted. 428 Mich 918 (1987).

The Court of Appeals *held*:

1. The WCAB did not err in failing to apply § 375(2) of the Workers' Disability Compensation Act, MCL 418.375(2); MSA 17.237(375)(2), in this action. Here, there was no claim made for benefits and no benefits received prior to the decedent's death and, thus, application of § 375(2) would be erroneous.

2. The testimony of the medical experts provided competent evidence to support the findings of the WCAB. Plaintiff met her burden of proving by a preponderance of the evidence that the injuries suffered by the decedent on the job were the cause of his death.

3. Decedent's employer had reason to suspect that decedent's employment and injury at work caused or contributed to his death. The employer was obligated to give notice of the injury to the bureau. The statute of limitations was tolled by the employer's failure to file an injury report with the bureau.

4. The two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2) applies here, barring plaintiff's recovery of benefits for any period of time earlier than two years immediately

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 186 *et seq.*, 229, 453, 488, 549 *et seq.*

See the Index to Annotations under Workers' Compensation.

preceding the date plaintiff filed an application for a hearing with the bureau. Application of estoppel to prevent use of the two-year-back rule is not warranted here. The two-year-back rule does apply to dependents in death cases.

The award of compensation to plaintiff is affirmed, reversed as to the amount of compensation and remanded to the WCAB for application of the two-year-back rule.

1. WORKERS' COMPENSATION — DEATH BENEFITS.

It must be shown that a work-related injury received by an employee was a proximate cause of his death in order for the employee's dependents to continue to receive workers' compensation benefits where the employee dies after an adjudication of liability has been made and payments begun or when a claim is pending; however, this provision does not apply where a claim for worker's compensation death benefits is made by the employee's dependent after his death (MCL 418.375[2]; MSA 17.237[375][2]).

2. WORKERS' COMPENSATION — WORKERS' COMPENSATION APPEAL BOARD — APPEAL.

The findings of the Workers' Compensation Appeal Board regarding the sufficiency of the evidence are conclusive, absent an error in the application of the law, where there is any competent evidence to support them.

3. WORKERS' COMPENSATION — LIMITATION OF ACTIONS — DEATH BENEFITS — NOTICE.

An employer with reason to suspect that a deceased employee's employment and injury at work caused or contributed to his death is obligated to give notice of such injury to the Bureau of Workers' Disability Compensation to receive the benefit of the statute of limitations pertaining thereto (MCL 418.381; MSA 17.237[381]).

4. WORKERS' COMPENSATION — TWO-YEAR-BACK RULE — DEATH BENEFITS.

A plaintiff may not recover workers' compensation benefits for any period of time earlier than two years immediately preceding the date that the plaintiff filed an application for a hearing regarding such benefits with the Bureau of Workers' Disability Compensation; such two-year-back rule applies to a claim for death benefits by a deceased employee's dependents (MCL 418.381[2]; MSA 17.237[381][2]).

*Robert L. O'Connell & Associates* (by *R. L. O'Connell*), for plaintiff.

*Conklin, Benham, Ducey, Ottaway, Listman &
Chuhran, P.C.* (by *Martin L. Critchell*), for defendants.

Before: McDONALD, P.J., and KELLY and W. F.
LaVOY,* JJ.

KELLY, J. On June 4, 1979, plaintiff filed a claim
against defendant Orville Frank Roofing Company
alleging that her husband died as a result of
injuries that occurred on his job. Defendants appeal by leave granted from the January 15, 1987,
decision of the Workers' Compensation Appeal
Board affirming a referee's award of death benefits
to plaintiff. Defendants' application for leave to
appeal to this Court was denied; however, the
Supreme Court, in lieu of granting leave to appeal,
remanded to this Court for consideration as on
leave granted. See *Kapala v Orville Frank Roofing
Co,* 428 Mich 918; 410 NW2d 803 (1987).

I

On the day of his death, June 5, 1968, plaintiff's
decedent was employed by Orville Frank Roofing
Company. On that date, decedent, Orville Frank
and another employee were hot-roofing a building,
the Thunder Bay Motel. This procedure required
heating tar or asphalt to approximately four hundred degrees Fahrenheit, which brought it to a
liquid state. This material was then carried in five-gallon buckets up a ladder to the roof of the
building and spread out on top of previously installed roofing paper.

Decedent's coworker, Roman Kamyszak, testified
that on the date of decedent's death decedent was
responsible for heating the tar and carrying it up
the ladder to the roof. At approximately 1:30 P.M.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Kamyszak went to the edge of the roof to request more tar. At that time, Kamyszak witnessed the kettle which was used to heat the tar explode. Kamyszak saw the lid fly up and flames come out, setting the decedent's hair on fire. Although Kamyszak yelled to decedent, warning him to get away, decedent remained in the immediate vicinity of the kettle, apparently frozen from shock or surprise. Once he recovered, decedent attempted to shut off the spigot where the tar was released, staying in the dangerous area.

Subsequently, Kamyszak testified that Frank required decedent to remain on the job, despite his obvious injuries, including scorched hair and burns evidenced by red marks on the right side of the head. During this time, decedent carried at least four more five-gallon buckets of tar to the roof.

Prior to the accident, decedent had been able to carry the material up the ladder as though he had "nothing in his hands at all." After the incident, Kamyszak stated that decedent was shaking and unable to safely walk up the ladder.

Kamyszak testified that he was able to prevail upon Frank to let decedent go home at approximately 2:00 P.M. No injury report of this incident was made by decedent's employer to the Bureau of Workers' Disability Compensation.

Three hours later, at approximately 5:00 P.M., decedent was found lying on the ground next to his running automobile. He was taken to the hospital and died at approximately 10:00 P.M. that evening. There was no autopsy performed. While decedent remained alive, no electrocardiogram test was performed.

## II

Findings of fact of the WCAB are conclusive,

absent a showing of fraud, if supported by record evidence; however, a WCAB decision may be reversed if the board "operated within the wrong legal framework or where its decision is based upon erroneous legal reasoning." *Flynn v General Motors Corp,* 162 Mich App 511, 514; 413 NW2d 444 (1987). Defendants' first argument on appeal is that the WCAB made an error of law requiring reversal in failing to apply § 375(2) of the Workers' Disability Compensation Act, MCL 418.375(2); MSA 17.237(375)(2).

In making this assertion, defendants rely on this Court's holding in *Noble v Ford Motor Co,* 152 Mich App 622; 394 NW2d 50 (1986). We find defendants' reliance on § 375 of the act and *Noble* factually and legally misplaced.

Defendants' construction of § 375 is not supported by a common-sense reading of the statute. The language of the statute is clear; once an adjudication of liability has been made and payments begun, or a claim is pending, subsequent death will serve to discharge any liability for further payments unless it is shown that the work-related injury was the proximate cause of death. This reading of the statute is supported by the holding in *Noble.* In *Noble,* plaintiff had received compensation benefits until the time of his death. His widow then sought death benefits. In looking at § 375, this Court stated:

> A plain reading of this provision clearly provides that where, as here, the employee dies after there has been an adjudication of workers' compensation liability and payment of those benefits, in order for the employee's dependents to continue to receive workers' compensation benefits, it must be shown that the work-related injury received by the employee was the proximate cause of his death. [*Noble,* 626.]

Here, there were no benefits received prior to death, nor any claim for benefits prior to death. Not until eleven years after the date of the fatal incident did the widow apply for compensation. On these facts, application of § 375 would be erroneous.

On the issue of causation, defendants also claim an error of law by the WCAB, since the board did not expressly identify the rule of law concerning causation that it applied. This claim is without merit. Reading the WCAB decision as a whole, it is clear that the board applied the standard in § 301 of the act in reviewing plaintiff's claim. That is, that decedent's injury that resulted in his death arose out of and in the course of his employment.

### III

Next, defendants argue that the WCAB had no evidence before it to make the findings that it did concerning the cause of death. Specifically, defendants claim the WCAB erred in accepting the speculative testimony of Drs. Greenward and Winkler, that the decedent suffered a myocardial infarction as a result of the incident at work. This claim really boils down to a sufficiency of the evidence issue. As to the sufficiency of the evidence, absent an error in the application of law, the findings of the WCAB are conclusive so long as there is any competent evidence to support them. See also *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). On this point we conclude that the testimony of the medical experts, especially Dr. Winkler, provided competent evidence to support the board's findings. Dr. Winkler's opinion alone allowed plaintiff to meet her burden of proving by the preponderance of the evidence that the injuries suffered by decedent on

the job were the cause of his death. Based on her review of the medical records, and her understanding of surrounding circumstances through hypothetical questioning, Dr. Winkler opined that decedent died of cardiogenic shock, most likely precipitated by a myocardial ischemic episode, most likely involving a myocardial infarction. She stated that the physical stress and activity of carrying buckets of tar to the roof would have contributed to the myocardial ischemia which Dr. Winkler believed was precipitated by the shock of having his hair catch fire.

Unlike in *Miklik v Michigan Special Machine Co,* 415 Mich 364; 329 NW2d 713 (1982), relied on by defendants, here the experts opined that there was a specific link between decedent's cardiac episode, which caused decedent's death, and a specific incident in the work place.

IV

Next, defendants argue that, regardless of the fact that the employer did not report the injury, plaintiff's claim is untimely. Defendants contend that, since the employer had no notice that decedent's death might be related to the injury, the limitation period was not tolled by the employer's failure to report the injury. Defendants argue that, while the employer had actual notice of the death of the employee, there was no reason for the employer to suspect that a work-related injury caused or contributed to that death. Emphasizing that the established cause of death in 1968 was a cerebrovascular accident and that no one suggested that this was caused by the incident at work, defendants contend that awareness of these facts alone will not toll the statute of limitations.

In reaching this conclusion defendants rely on

*Nicholson v Lansing Bd of Ed,* 423 Mich 89; 377 NW2d 292 (1985). In *Nicholson,* the claimant suffered a spontaneous subarachnoid hemorrhage in 1973, after going home following his shift at work. The employer made no report to the Bureau of Workers' Disability Compensation. Claimant eventually petitioned the bureau for a hearing in 1978.

In interpreting § 381 of the act, the Supreme Court stated:

> We do not believe the Legislature intended to burden employers and the bureau with a requirement that all injuries, from whatever cause, sustained by employees must be reported. In order to receive the benefit of the § 381 statute of limitations employers must report those injuries in which the circumstances indicate the possibility of a work-related cause. Where an injury is suffered outside the workplace and the employer does not have reason to suspect the employment caused or contributed to it, there is no obligation to give notice to the bureau to receive the benefit of the statute of limitations. [*Nicholson,* 102-103.]

In applying this rule to the facts in *Nicholson,* the Supreme Court concluded that there was not sufficient notice under § 381 to make it possible for the employer to be on notice of the possibility of a work-related injury. Therefore, the limitation period of the statute was not tolled.

We first note that *Nicholson* also provides that, where the issue is raised that a claim is untimely, the rule in effect at the time of the injury applies. *Nicholson,* 93. At the time of decedent's injury here, MCL 412.18; MSA 17.168, since repealed, applied. Under this less-stringent standard, defendant employer had sufficient notice of decedent's injury to file a report with the bureau, and the failure to do so tolled the limitation period. *Norris*

*v Chrysler Corp,* 391 Mich 469; 216 NW2d 783 (1974).

However, even applying the more stringent rule in *Nicholson,* we likewise conclude that the statute was tolled by the employer's failure to file an injury report with the bureau. Defendants admit actual knowledge of the injuries sustained by the decedent at work, a mere three hours before he was found lying outside of his car and a mere eight hours before his ultimate death. Although defendants attempt to limit their knowledge of the injury to encompass only the burns decedent suffered, the testimony of decedent's coemployee was that he noticed that decedent was visibly shaken, unable to safely perform his operation, which he had previously been able to do easily, and that he complained about this to the owner of the company because he believed decedent's condition jeopardized his own safety. Upon hearing of decedent's death, this coemployee—within two days of the incident—spoke with the employer and openly discussed the possibility that the death was the result of the injury that occurred at work.

Decedent's employer had reason to suspect that decedent's employment and injury at work caused or contributed to his death. The employer was then obligated to give notice to the bureau in order to receive the benefit of the statute of limitations.

V

Defendants' final argument is that the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2) applies, barring plaintiff's recovery of benefits for any period of time earlier than two years immediately preceding the date plaintiff filed an application for a hearing with the bureau. We agree.

Section 381(2) provides:

> Except as provided in subsection (3), if any
> compensation is sought under this act, payment
> shall not be made for any period of time earlier
> than 2 years immediately preceding the date on
> which the employee filed an application for a
> hearing with the bureau.

This provision is both retroactive to plaintiff's
claim and is not waived by defendants' failure to
raise it before the hearing referee. See *Howard v
General Motors Corp,* 427 Mich 358; 399 NW2d 10
(1986), and *Jones v Dee Cramer, Inc,* 166 Mich
App 410; 420 NW2d 843 (1988). However, plaintiff
argues that, since the act is remedial in nature, it
should be construed in a liberal and humanitarian
manner and, because the employer did not file an
injury report and allegedly attempted to conceal
the occurrence of the injury, defendants should be
estopped from raising the two-year-back rule.

Plaintiff relies on *Fuchs v General Motors Corp,*
118 Mich App 547; 325 NW2d 489 (1982). In *Fuchs,*
this Court held that in the proper circumstance a
party may be estopped from invoking the two-year-
back rule. However, for estoppel to operate all its
elements must be present. In *Fuchs,* the WCAB
found that defendant made an intentional miscal-
culation of wages. Therefore, there was a misrepre-
sentation of a fact within defendant's knowledge,
relied on by plaintiff for the purpose of inducing a
course of conduct.

On the facts here, application of estoppel is not
warranted. Here, there was only an omission to
file an injury report and an alleged attempt,
eleven years later, to stifle the evidence provided
by a coworker. No reliance by plaintiff on the
omission was shown. Plaintiff was free to file her
claim and eventually did.

Plaintiff also argues that the two-year-back rule does not apply to dependents in death cases. Essentially, plaintiff argues that since she is not an employee, but a dependent, § 381(2) does not apply, since it does not apply to a claim for death benefits. We disagree. Plaintiff ignores the effect of the language of § 381(2) that provides that the limitation applies to any compensation under this act.

We affirm the award of compensation to plaintiff; however, we reverse as to the amount of compensation and remand to the WCAB for application of the two-year-back rule.